1833.

MARSH
*v.*
WHEELER.

---

ANN MARSH, widow and administratrix of David Marsh, Jr.
deceased *v.* WHEELER and another, executors of David
Marsh, Senr. deceased, *et al.*

---

A devisor may give to his devisee either land or the price of land at his pleasure ; and the devisee must receive it in the quality in which it is given and cannot intercept the purpose of the devisor. If it be the purpose to give land to the devisee, the land will descend to his heir, and if it be the purpose of the devisor to give the price of land to the devisee, it will, like other money, be part of his personal estate.

If one of several devisees dies in the lifetime of the devisor and the heir of the devisee stands in his place, the purpose of a sale, for the convenience of a division, still remains and the share of the one dying will pass as money and not as land. But, in the event of all the devisees dying in the lifetime of the devisor, the purpose of a sale for the sake of a division, may no longer be applicable, and the heirs will take the whole interest as land.

When distinct legacies are given to individuals or an aggregate fund is directed to be divided among them in equal shares, without the benefit of survivorship, their interests are several and if any of them die before the shares are vested, what was intended for them will fall into the residue.

There are cases of a legacy lapsing where the party interested dies after the testator, provided it happen before the legacy is payable. But in order to have this effect, it must clearly appear that the time of payment is made the substance of the gift, and that the testator meant the time of payment to be the period when the legacy should vest ; and if, in such case, the legatee happens to die before the time arrives, although after the testator's decease, the legacy necessarily fails. On the other hand, if the gift is immediate and the payment only is postponed to a future period (let it be of definite or uncertain duration and distinct from the gift) the legacy is vested and the death of the legatee after the testator will not defeat it.

If lands are devised or descend to the heir, charged with the payment of a pecuniary legacy to some third person, payable at a future day or upon some subsequent event, and the legatee happen to die before the time appointed for payment, the law favors the heir and considers the legacy lapsed.

The true rule with respect to the vesting of legacies payable out of real estate is this : where the gift is immediate but the payment postponed, it is contingent and will fail if the legatee dies before the time of payment arrives ; but where the payment is postponed, in regard to the convenience of the person and the circumstances of the estate charged with the legacy and not on account of the age, condition or circumstances of the legatee, it will be vested and must be paid, although the legatee should die before the time of payment.

D. M. by his will, disposed of the residue of his estate as follows : "I will, order and direct all the rest, residue and remainder of my real and personal estate to be sold after the expiration of one year from the time of my decease. And I hereby authorize and empower my executors and executrix to sell and convey the said rest, residue and remainder

of my real estate accordiugly. And as to the said residue of my personal estate and the proceeds of the sale thereof and the proceeds of the sale of the said rest, residue and remainder of my real estate, I give, devise and bequeath the same as follows, to each of my said daughters" (*naming them*) " the sum of $500. and the residue thereof to my sons" (*naming them*) " to be equally divided between them share and share alike. And in case either of them shall have departed this life before me, leaving lawful issue, then his portion thereof to go to such issue." One of the sons died after the testator, leaving a widow but no children. The executors had sold the real estate and the proceeds of the personalty remained in their hands. Upon a bill filed by the widow of the deceased son : IT WAS HELD, that the share left to the latter was to be considered as personal estate, and that the legacy did not lapse, but would go to his widow and next of kin.

1833.

MARSH

*v.*

WHEELER.

---

David Marsh the elder, by his will, dated the thirteenth day of June one thousand eight hundred and thirty-one, after directing payment of his debts and devising a house and lot of land to his daughters for life, with remainder in fee to his grand-children, disposed of the residue of his estate in the following words : " I will, order and direct that all the rest, residue and remainder of my real and personal estate be sold, after the expiration of one year from the time of my decease. And I hereby authorize and empower my executors and executrix to sell and convey the said rest, residue and remainder of my real estate accordingly. And as to the said residue of my personal estate and the proceeds of the sale thereof, and the proceeds of the sale of the said rest, residue and remainder of my real estate, I give, devise and bequeath the same as follows, that is to say, to each of my said daughters, Maria, Ann and Eliza the sum of five hundred dollars and the residue thereof to my sons Effingham W. Marsh, David Marsh, Jr., Matthew Marsh and William Marsh, to be equally divided between them share and share alike. And in case either of them shall have departed this life before me, leaving lawful issue, then his portion thereof to go to such issue." Then followed, by way of proviso, a power to the executors, in their discretion, to lease from year to year or for a term not exceeding three years a house and lot on the corner of Houston street and the Bowery in the city of New York (being a part of the real estate directed to be sold) and to divide the rents equally between his before-named sons ; and with the same direction, in case either of them should have died before him, leaving lawful issue, for

*January* 6. 1834.

*Will.*
*Turning real estate into personalty.*
*Legacy.*

the latter taking the share of the one so dying. He then appointed his daughter Maria and the defendants Andrew C. Wheeler and John Perrin his executrix and executors of his will.

The testator died on the twenty-ninth day of July, one thousand eight hundred and thirty-one, possessed of considerable real and personal estate. He left four sons and three daughters him surviving. But before the end of one year from his death and on the fifteenth day of July one thousand eight hundred and thirty-two, David Marsh the younger, one of the sons, died intestate, without issue and leaving the complainant his widow. She also had become his administratrix.

About a year and eight months after the death of the testator, the executors sold all the real estate which was directed to be so disposed of, saving one lot of ground. The proceeds of the personal estate remained in their hands.

The complainant, as the widow and administratrix of David Marsh the younger, claimed the proportion of the proceeds of real and personal estate which her husband would have been entitled to, if living; and she now filed her bill for an account and payment of it.

Mr. *T. S. Brady* for the complainant.

Mr. *C. R. Disosway* for the defendants.

*April 21.*    THE VICE-CHANCELLOR:—The general question in this case is, whether the complainant, widow and administratrix of David Marsh the younger, is entitled to any share or portion of the estate of David Marsh the elder, and if so, how much ?

The real estate is not devised to the executors, nor was the legal title vested in them by operation of law. And from not being expressly devised to any one, it descended to the heirs at law: subject to the power of sale conferred upon the executors. The power here given is a general one in trust, coming under the statute (1. R. S. 732. §. 77. 94.), and is imperative upon the grantees of the power (§. 96). It operates as an incumbrance; and when it is executed, the

same overreaches and divests the legal title and estate in the heirs. The power could not be executed until after the expiration of one year from the testator's death ; but, the moment it was executed, the legal title passed to the purchaser and the purchase money became assets in the hands of the executors—like the proceeds of the personal estate and for the same general purposes. The obvious intention of the testator was to convert the whole of his real estate, with the exception of the house and lot devised to his daughters, into money, in order to have the proceeds taken as a part of his personal estate, to have them blended, and all disposed of together and as one fund in payment of debts and legacies of five hundred dollars apiece to the daughters and so as to have the remainder divided between the four sons as residuary legatees. The conversion here intended is a conversion " out and out ;" and its effect is " to impress the real estate with the quality of money, so, that, after the testator's death, it shall be taken to have existed as money previously to his death and, therefore, be considered, to all intents and purposes, part of his general personal estate :" *Ram on Assets*, 206. The difference in the effect of conversions of this kind is fully explained by the author just quoted ; and the doctrine may also be found in *Smith* v. *Claxton*, 4. Mad. 484. In this case, Sir John Leach, V. C., upon a review of all the cases, states certain general principles which admit of clear and decisive application in determining the effect of a conversion where the object and purpose of it, partially or wholly, fails. He observes, " a devisor may give to his devisee either land or the price of land at his pleasure ; and the devisee must receive it in the quality in which it is given and cannot intercept the purpose of the devisor. If it be the purpose to give land to the devisee, the land will descend to his heir ; and if it be the purpose of the devisor to give the price of land to the devisee, it will, like other money, be part of his personal estate." And he puts the case, where a testator directs his land to be sold and the produce divided between several, there the obvious purpose is that the sale is to be made for the convenience of division and they take their several interests as money and not land. So, if one, of several devisees, dies in the lifetime of the devisor

and the heir stands in his place, the purpose of a sale, for the convenience of a division, still applies to the case in the event which has happened and the share of the one dying will pass as money and not land.    But in the event of all the devisees dying in the lifetime of the devisor, the purpose of such a sale, in an event of the kind, could have no application to the case and the heir would, consequently, take the whole interest as land.

The same able judge, in the subsequent case of *Dixon* v. *Dawson*, 2. S. & S. 327. adhered to the principles stated by him in *Smith* v. *Claxton*, namely, that where the whole land is properly sold by trustees and there is only a partial disposition of the produce of the sale (owing, for instance, to the failure, by death, of a devisee to take) there the surplus belongs to the heir as money and not as land, (and on this point see *Green* v. *Jackson*, 5. Russ. 35.)    In the case of *Dixon* v. *Dawson*, this point, amongst others, arose :  The testatrix, at her death, left Philip Dixon her heir at law ; and her real estate was sold by trustees in execution of the trusts of her will during the life time of this Philip Dixon.  He died, however, before the trusts of the will were completed ; and there being a surplus arising from the real estate beyond the particular purposes of the will, and which came to him as heir at law, the question was, whether it vested in him as land or money and belonged to his heir or personal representative.    The vice-chancellor held, the surplus to belong to the personal representative.

I am entirely satisfied with the principle raised in these decisions and with the rules there laid down ; and, applying them to the case now under consideration, it is plain that the share left to David Marsh the younger, whoever may be entitled to it, is to be regarded as personal estate.    The sale directed by the will was obviously for the purpose of more conveniently effecting a division among the sons as well as for paying the legacies to the daughters ; and this purpose remains applicable to the case whether all the sons be living or one of them be dead.    I am of opinion the matter in controversy must be considered as money or personal estate in the hands of the executors ; and, that, if any right vested in David Marsh the younger which can now be claimed under

him, it is a right to money and not to land : and, consequent-ly, that it belongs to the personal representative and not to his heirs at law.

This point being settled, I proceed to consider the next important question : whether the right of David Marsh the younger, as residuary legatee, was vested so as to pass, upon his death, to his personal representative or was contingent and merged in the estate ? I put the question in this way, because it is certain the share of David Marsh the younger did not go to the surviving brothers. The bequest is not to them in joint tenancy. There are no words of survivorship; and when distinct legacies are given to individuals or an aggregate fund is directed to be divided among them in equal shares, their interests are several and if any of them die before the shares are vested, what was intended for them will fall into the ·residue : because the benefits intended for the deceased legatees are not given over to the survivors : *Page v. Page*, 2. P. Wms. 489. Hence, in the case of a joint tenancy, the death of one will not occasion a lapse, but, in the other, such an event, under certain circumstances, will defeat the legacy or share (of the deceased) in the aggregate fund.

Then, as to the question of lapse. The ordinary case in which it happens is, where the intended legatee dies before the testator and there is no express limitation or bequest over. In the present instance, the testator has undertaken to guard against a lapse which might happen by the death of ei-ther of his sons before him, by giving the shares over to their lawful issue, in case they had any. These events, however, have not happened. David died, without issue, after the testator. Still, there are cases of a lapse where the party interested dies after the testator, provided it happen before the legacy is payable. And yet to have this effect, it must clearly appear that the time of payment is made the sub-stance of the gift and that the testator meant the time of pay-ment to be the period when the legacy should vest; and, in such a case, if the legatee happens to die before the time ar-rives, although after the testator's decease, the legacy ne-cessarily fails. On the other hand, if the gift is immediate and the payment only is postponed to a future period (let it

21

be of a definite or uncertain duration and distinct from the gift) the legacy is vested and the death of the legatee after the testator will not defeat it. This rule has been adopted by courts of equity and is established as a rule of construction in relation to legacies out of personal estate for the sake of preserving an uniformity of decision with the ecclesiastical courts over matters of which they have concurrent jurisdiction—the latter courts having borrowed it from the civil law. And, now, let us apply it to the present case.

There is certainly nothing in the will, so far as the personal estate is concerned (and I am now considering the personal estate apart from the proceeds of the real estate) but what admits of the construction of an immediate and absolute gift. The words are " and as to the said residue of my personal estate"—the testator having previously directed payment of debts and the personal estate being the primary fund for the purpose—" and the proceeds of the sale thereof"—having also previously directed a sale to take place after the expiration of a year—" I give, devise and bequeath"—in conjunction with the proceeds of the real estate— " the same as follows, &c." : that is to say, the pecuniary legacies to his daughters and the residue to his sons in equal shares. The time appointed for the conversion of all the personal estate into money and for payment or a division of it amongst the legatees, is distinct from the gift. The testator was probably aware of the law allowing one year to elapse before executors can be required to pay legacies. The directions in the will, with regard to time, seem to have been intended for no other purpose than to impress more strongly upon the executors an observance of the duty which the law itself would impose. The time mentioned in the will, namely, one year from the death of the testator, amounts to no more than a direction as to the manner of raising and paying the legacies : and not of fixing the period for their vesting. The circumstance of the will's containing no provision against the lapse of any of the legacies in case of the dying of legatees after the testator and within a year, appears to me a strong indication of his intention to make the legacies vested ones : more especially as he has provided, to a certain extent, against the contingency of any

of his sons dying before him, and whereby their legacies would have been entirely disappointed.

In *Lowther* v. *Condon*, 2. Atk. 127. Lord Hardwicke placed great reliance upon such a circumstance in settling the construction of a will and determining the effect of a similar event.

I am satisfied upon this part of the case. A lapse has not taken place, so far as the proceeds of the personal estate is disposed of in legacies.

Is there, then, any distinction to be made in respect to the avails of the real estate? The rule with respect to the sinking of legacies charged upon and payable out of real estate is somewhat different; and there are cases where it has been held that a legacy, made up partly of personal estate and partly of money charged upon lands and to be raised out of the same, has, so far as regarded the personal estate, vested; and lapsed as to the part which was to come out of the realty. But, in no case has this been decided where the real estate was ordered to be sold and converted, out and out, into money and, as such, disposed of in legacies. Nor is there any reason for making the distinction or for applying the doctrine to cases like the present. It can only be where lands are devised or descend to the heir, charged with the payment of a pecuniary legacy to some third person, and payable at a future day or upon some subsequent event. In such a case, according to the general rule, if the legatee happen to die before the time appointed for payment, the law favors the heir and considers the legacy lapsed or merged in the inheritance.

The true rule with respect to the vesting of legacies payable out of real estate is this: where the gift is immediate but the payment is postponed until the legatee, for instance, attains the age of twenty-one years or marries, there, it is contingent and will fail if the legatee dies before the time of payment arrives: but where the payment is postponed, in regard to the convenience of the person and the circumstances of the estate charged with the legacy—and not on account of the age, condition or circumstances of the legatee—in such a case it will be vested and must be paid, although the legatee should die before the time of payment:

1. Roper on Leg. ch. xi.; *Birdsall* v. *Hewlett*, 1. Paige's C. R. 33. Whether the present case falls strictly within any part of this rule or is governed by it, I shall not particularly enquire; but if it does, it must be within the last branch of it—and this is sufficient to show that, so far as legacies are payable out of the produce of the real estate, they are vested legacies. The gift is, of the proceeds of sale of the real estate; and from the language of the will I consider it an immediate gift, which took effect upon the death of the testator. The time of payment was postponed for the convenience of the estate, in order that it might be sold at the time appointed by law for payment of legacies out of the personal estate. The object of the testator appears to have been, and it was a rational one, that the sale of the realty should be delayed and the payment of the legacies consequently postponed until the executors could be prepared with the general fund in their hands, arising from the whole of the testator's property, to pay over and make a final settlement with his children as legatees. There is nothing inconsistent in this view of the case, with vested legacies in each, from the time the will first took effect.

And besides this: considering the intention to convert the real property into personalty "out and out" and to give it in legacies as money, then it appears to me there is no other conclusion to be formed than the one to which I have arrived.

I must decree in favor of the complainant. She, as the personal representative of her husband, is entitled to an account of the whole of his share. After payment shall have been made of his debts (provided there be any) and the taking out her distributive share as widow under the statute, the residue will belong to her husband's next of kin, who are understood to be his brothers and sisters, parties defendants. It is right the costs of the suit, on both sides, should be borne and paid out of this share of the estate.