STEPHEN P. FULLER & others *vs.* ROBERT C. WINTHROP, JR., & others.

If a testator, who in his lifetime has given $15,000 to one of his four daughters, makes a devise in trust, with a direction that the trustees shall from the rents and income thereof pay to each of his other three daughters $450 every six months from the time of his decease, and lay by and invest for accumulation annually a certain sum, till from this source, and from the ordinary and not forced sales of lands authorized by other parts of the will to be sold, $15,000 shall have been obtained, which sum, as often as obtained, shall be paid to each of said three daughters upon their respective receipts, or be invested in the purchase of a house or houses, in their separate names, as they respectively shall prefer, upon which payment or investment the semi-annual payments of $450 shall cease; and it appears from the whole will that the postponement of the payment of the principal legacy is for the benefit of the estate; and there is no devise or limitation over, in case of the decease of either of the daughters before payment of the principal legacy; the legacies vest at the time of the testator's death, and the husband and administrator of one of the daughters who has died without issue, and without making any election whether she would receive the legacy in money, or have the amount invested in a house, is entitled to receive the full amount of the same in money, and the semi-annual payments until the principal legacy is paid; although the will, which provides for the distribution of the rents and income of the residue of the trust property, directs that, in the event of the decease of any of the testator's daughters, leaving a husband, one half of the sum

that would have been paid to her shall be paid to him, in every division and payment thereafter to be made from the rents and income thereof; and although by a codicil the testator orders the trustees to provide for and pay his principal debts, and also the three several principal sums of $15,000, from the proceeds of the sales of the estates authorized to be sold in his will, which have thus far proved insufficient for the purpose, and the interest on his debts and the semi-annual payments of $450 to be paid from the rents and income as aforesaid.

BILL IN EQUITY, in the nature of a bill of interpleader, brought by the executors and trustees under the will of Benjamin Adams, late of Boston, deceased, in which they ask the direction of the court in relation to the execution of certain trusts arising under the will and a codicil thereto. The will was dated May 8, 1858, and the codicil October 21, 1858. The testator died on the 13th of November 1858, leaving a widow, and four married daughters; the youngest of whom, Mrs. Winthrop, died without issue on the 23d of April 1860, and her husband was duly appointed as her administrator.

The will, after a specific devise of real and personal property to the testator's wife, gives the whole residue to trustees, during the life of his wife, children, and grandchildren, born and to be born, and the survivor of them ; charged in the first place with his debts, and all expenses and charges, and then in trust to keep the real estate in good condition and repair, and to take the rents and profits, and, after payment of repairs, expenses and charges, directs its disposition as follows :

That the trustees " shall, during the continuance of these trusts, annually, semi-annually or quarterly, from the residue of said rents, issues, income and profits, the account thereof to be kept annually, pay to my said wife an annuity or yearly sum of six thousand dollars, for and during her natural life, in equal quarter-yearly payments, commencing from the time of my decease; and pay to my three daughters, Caroline Walter Oxnard, Helen Cordis Everett, and Frances Pickering Winthrop, the sum of four hundred and fifty dollars each, every six months from the time of my decease ; and lay by and invest for accumulation, annually, the sum of two thousand dollars, till from this source, and from the ordinary and not forced sales of lands

the sum of fifteen thousand dollars shall have been obtained · which sum, as often as the same shall have been obtained, to be paid to each of my last three named daughters upon their respective receipts, or be invested in the purchase of a house or houses, the deed or deeds of which to be taken in their respective separate names, as they respectively shall prefer; and, upon said respective payments being made, the said semi-annual payments of four hundred and fifty dollars to cease, and be no longer paid to each so having been paid said sum of fifteen thousand dollars in money, or by investment in the purchase of a house And the rest and residue of said net annual rents, issues, income and profits, after paying and reserving as aforesaid, and after paying debts, funeral expenses, testamentary expenses, and other expenses and charges, to pay and divide as follows : That is to say, from time to time, to pay one-fourth part into the proper hands of each of my four daughters, Louisa Ann Russell, Caroline Walter Oxnard, Helen Cordis Everett, and Frances Pickering Winthrop, respectively, during each of their respective natural lives, for their sole and respective use and benefit, or into the hands of such persons as they respectively, under their respective hands in writing, but not by way of anticipation, shall appoint, so that the same shall not be subject to the debts, control or engagements, of any husband of my said daughters respectively; and the receipts of my said daughters, notwithstanding coverture, shall be a sufficient discharge for the respective fourth parts ; which fourth parts are to be respectively increased, as the debts, expenses, charges, annuity of six thousand dollars, and semi-annual payments of four hundred and fifty dollars shall have been paid, and when and as they shall severally cease to be paid, till the whole rest and residue of the rents, issues, income and profits, deducting only expenses and charges, insurance and necessary repairs, shall be to be distributed and divided to my said daughters, in the same proportions, in like manner with the balance of said residue as herein last is provided; and then the same shall be so divided and paid ; that is to say, equally to each. And from and after the decease of any of my said four daughters who shall die leaving lawful

5 *

issue alive at her death, or from and immediately after my
death if any of my daughters shall die before me leaving law-
ful issue alive at my death, shall, from time to time, pay the
one fourth of the said balance, increased balance, or residue, of
the rents, issues, income and profits aforesaid, into the proper
hands of the lawful issue of such deceased daughter, in such
manner that the lawful issue of any and every such daughter
who may hereafter decease leaving lawful issue alive, through
all the degrees of descent during the continuance of these trusts,
shall take and have from time to time, by right of representa-
tion, and those in the same degree, equally, as tenants in com-
mon, the share and respective shares which the parent and
respective parents of such issue would have been entitled unto
if living; and so that the same shall not be subject to the debts,
control or engagements, of the husband of any female who may
be entitled to any portion thereof; and to whom, or to whose
order in writing, but not by way of anticipation, it shall be paid.
And in case any of my said daughters shall die without leaving
any lawful issue alive, as well as in case of the extinction by
death, during the continuance of these trusts, of the lawful issue
of any daughter who may decease, the share or portion which
would have belonged to such child or issue shall from time to
time be-shared in manner aforesaid by the surviving children, or
surviving children and issue, or surviving issue, as the case may
be. And from and after the decease of the longest liver and
last survivor of my said four children, and their children who
may be living at the time of my decease or be born in due time
afterwards, upon trust, that my said trustees, or the survivors or
survivor of them, or other the trustees or trustee, for the time
being, of this my will, shall thereupon forthwith convey the
estates, lands, buildings and their appurtenances, and all and
singular the premises, whatever the same may then be, in all the
changes that may have been made in sales, proceeds of sales,
investments, reinvestments and changes of investments, abso-
lutely, in equal shares and proportions, to such lawful issue of
my said children as may then be living, and their heirs forever,
in fee-simple, in such manner that the lawful issue then living

of each of my said children shall take and have, by right of representation, and those in the same degree, equally, as tenants in common, the share and respective shares which the parent and respective parents of such issue would have taken and had if living, agreeably to the law regulating the descent and distribution of estates. Provided always, my will is that my executors have a lien on all my estates and property, such as the law gives them; but nevertheless I have assumed that they would be enabled, from my personal property not specially de-. vised, and from the rents, issues, income and profits devised in trust, not only to pay the annuity of six thousand dollars, and the semi-annual payments of four hundred and fifty dollars to each of my three daughters, with the reservation of two thousand dollars, all of which as ordered in this my will, but to pay, within a short time after my decease, all my just debts, funeral expenses, and testamentary expenses and charges. That my executors, however, may at no time be without resources, I hereby authorize and empower them, and the survivors and survivor of them, to sell any and all such personal property as I may have at the time of my decease, not herein specially devised to my wife; and from time to time, and at any and all times, to sell and convey any and all my lands and estates lying and being in that part of said city of Boston called South Boston, in Washington Village, West Roxbury, on the Tremont Road, and in Newton Lower Falls, whether necessary for the payment of debts, annuity, legacies, expenses, &c., or not necessary or important to either of those ends or objects; and after paying expenses and charges, debts, funeral and testamentary charges and expenses, and all arrearages in the matter of the annuity, and semi-annual payments of four hundred and fifty dollars to my three daughters first herein mentioned, and completing th payments of the fifteen thousand dollars to each of said three daughters (thereby causing their respective semi-annual payments of four hundred and fifty dollars to cease and be no longer continued), so far as the proceeds of such sale or sales shall be needful, if at all, for these purposes, then the proceeds, or residue of the proceeds, from any and all such sale and sales

to be paid into or be in the hands of my said trustees and trustee of this my will, for the time 'being, to be invested by them or him in good dividend-paying stocks or good mortgages, or in real estate, with authority to sell, change, reinvest, and again, from time to time, to change the investments of the same; nevertheless, always to hold to the uses and trusts in this second article of my will set forth and provided, subject to the same provisos and limitations; the dividends, interests, income and profits being to be paid, distributed and divided as herein is provided, as to rents, issues, income and profits; and the principal divided on the contingency in which the other property and estates are to be divided, and in manner to the same persons and in the same proportions as the rest or other estates and property in this second article in my will."

" In the event of the decease of any of my daughters leaving or not leaving issue, the husband of such daughter surviving, in every such case after my death, during the continuance of these trusts, I hereby will and order that from and after such an event, under such circumstances, during the natural life of such surviving husband, in every division and payment to be made from the rents, issues, income, profits, dividends and interests from the estates and property held in trust, that the one half the sum that would have to have been paid to such deceased daughter, had she been alive, be paid to her surviving husband; the other half only to her children and issue, if any, in manner and proportion as hereinbefore ordered and provided. Thus far I limit and qualify the provision herein made for my children respectively and their respective issue; and it is not intended by this provision that the time of final division and dissolution of these trusts shall in any degree be put off or proonged.

" In the event of loss or losses by fire, I hereby authorize my trustees, and the survivors and survivor of them, or other the trustees and trustee, for the time being, of this my will, to repair and to build anew; and, for these purposes, to use the sum and sums to be derived from insurance, and from sales of lands herein authorized and contemplated, and from anticipation of receipts

from any and all sources, and to apply such receipts in payment of such bills for repairs and building anew."

The only material clauses of the codicil are the following :

" *First.* I will and order that my trustees, and the survivors and survivor, provide for and pay my principal debts, and also the three several principal sums of fifteen thousand dollars to my three daughters (viz., fifteen thousand to Caroline Walter Oxnard, fifteen thousand to Helen Cordis Everett, and fifteen thousand to Frances Pickering Winthrop), from the proceeds of the sales of the estates authorized to be sold in said will ; the interest on the principal debts, and the semi-annual payments of four hundred and fifty dollars to each of said daughters, being to be paid from the rents, issues, income and profits, till the debts and principal sums of fifteen thousand dollars have respectively been paid, as contemplated in said will.

" *Secondly.* I will and order that my trustees, the survivors and survivor, have full power and authority to negotiate a continuance of the indebtedness of my estate from time to time, or such portions thereof as they or he may judge expedient; thereby enabling them or him to have ample time to make sales of the property and estates authorized and contemplated to be sold, not only to the full amount of said indebtedness, but also to pay in full said several principal sums of fifteen thousand dollars to my three daughters herein last named."

*S. Bartlett & W. Minot, Jr.*, for the respondents. If payment or distribution of a legacy appears to be postponed for the convenience of the fund or property, the vesting will not be deferred until the period of payment. 1 Roper on Leg. (2d Amer. ed.) 554. 1 Jarman on Wills, 756. *Harris* v. *Fly*, 7 Paige, 421. *Marsh* v. *Wheeler*, 2 Edw. Ch. 163. *Tazewell* v. *Smith*, 1 Rand. (Va.) 313. *Eldridge* v. *Eldridge*, 9 Cush. 516. *Bowker* v. *Bowker*, Ib. 519. 2 Williams on Executors, (4th Amer. ed.) 1082, n. The giving of interest on a legacy is tantamount to an absolute gift of the capital, and the capital vests at the death of the testator. 2 Roper on Leg. (2d Amer. ed.) 1476. *Garret* v. *Rex*, 6 Watts, 14. *Humphrey* v. *Humphrey*, 1 Sim. (N. S.) 536. There is in this case no devise or limitation over. The testator

had already given the same sum to one daughter, and could not have intended that, if his other daughters should die with children before the executors were ready to pay the principal legacy, the amount should go to his heirs, instead of to those children. This construction would make the legacy dependent on the delay of the executors.

*P. W. Chandler & G. O. Shattuck*, for the executors. The semi-annual payments are to be made out of a different fund from the $15,000. By the codicil, they are to be made out of certain specified real estate ; and the principal legacy is to be paid from the avails of certain other real estate. There is a provision for the $15,000 in case of decease. At a certain time, this sum is to be taken out of a fund. If not taken out, it remains in the fund, to be distributed as provided for the fund. The principal legacy to each daughter is contingent upon her surviving, and making her election at the time when it is to be made. It is impossible to give effect to this provision without an election. *Chew* v. *Chew*, 28 Penn. State R. 17. *Flintham's appeal*, 11 S. & R. 16. *Vaughan* v. *Vaughan*, 30 Alab. 329. The clear intent of the testator was to make a provision for his daughters personally. The legacy was to be paid on their separate receipts, or invested in a house in their separate names. If there is simply a direction to executors to pay, or to divide and pay, at a future time, or to transfer from and after a certain event, the legacy does not vest. *Watson* v. *Hayes*, 5 Myl. & Cr. 125. *Leake* v. *Robinson*, 2 Meriv. 387. *Booth* v. *Booth*, 4 Ves. 399. *Ford* v. *Rawlins*, 1 Sim. & Stu. 328. The fact that semi-annual payments are to precede the payment of the principal legacy does not make it vest, because they are from a different fund. *Pulsford* v. *Hunter*, 3 Bro. C. C. 416. *Hanson* v. *Graham*, 6 Ves. 249. *Leake* v. *Robinson*, *ubi supra*. *Vaudry* v. *Geddes*, 1 Russ. & Mylne, 203. The gift cannot take effect until each daughter shall have elected whether to take the money on her receipt, or have it invested in a house in her name. The difference is important. Different rules of descent would govern. And this election cannot now be made. *Fontain* v. *Ravenel*, 17 How. (U. S.) 369, 399. The specific

provision for the husband, in case of the death of a daughter shows that the testator intended that he should have no more than that. Besides the election by the daughters, the trustees themselves must elect which daughter they will pay first; and this election has never been made, and never can be made, in reference to Mrs. Winthrop. There is another contingency, namely, the insufficiency of the funds from which the payments are to be made. The codicil limits the gift to specific lands, which have proved insufficient. *Cryder's appeal,* 11 Penn. State R. 72. 2 Freem. Ch. Cas. 21. *Colchester* v. *Stamford,* Ib. 124. The two leading ideas of the testator seem to have been to secure his property exclusively for the benefit of his own children, and to prevent the sale of his real estate, until his daughters had died.

*Bartlett,* in reply. If the real object is to give a sum of money, which shall be invested in an alternative mode, according to the election of the legatee, and an election becomes impossible by death, the representatives of the legatee may make the election. See 1 Roper on Leg. (2d Amer. ed.) 572, 573, 640, 645, 655, 784. In reference to the election by the trustees which daughter to pay first, the matter becomes unimportant, because interest is allowed. It is a demonstrative legacy, and the estate is ample. It is the duty of the trustees to sell, for payment of the legacy, within a reasonable time. Hill on Trustees, 712.

HOAR, J. The questions submitted to us by the bill and answers are, whether Mr. Winthrop, the husband of Frances Pickering Winthrop, is entitled to the sum of fifteen thousand dollars, which would have been payable to her if she had lived, or to any part thereof, the same not having been paid, nor any election respecting the payment having been made by her, during her lifetime; and whether the semi-annual payment of $450, which was made to her during her life, should be made to him until the principal sum of $15,000 is paid?

The bill avers, and the answers admit, that the provision for the payment of the $15,000 to each of the three daughters was in fact made to equalize the shares of the testator's four daughters in his estate; Mrs. Russell, the other daughter, having

received from the testator a gift of $15,000 at the time of her marriage; and the three daughters having received no such gifts from the testator prior to his decease, but only annual allowances from him after their marriages.

The difficulty in interpreting the will arises from the occurrence of circumstances which do not seem to have been contemplated by the testator, and were therefore not met by any express provision; first, the death of Mrs. Winthrop before the trustees were ready to pay the legacy of $15,000; and secondly, the insufficiency of the sales of lands which he authorizes his trustees to sell, to pay the debts and legacies which he desired should be paid from those sales.

But on a careful comparison of all the parts of the will, we are satisfied that the legacy to Mrs. Winthrop of $15,000 must be regarded as vesting at the decease of the testator; and that this result is not only required by the application of sound rules of construction, but was intended by him.

It is the policy of the law to construe legacies as vested rather than contingent, wherever it can be done without perverting the language of the bequest; and there are three principal considerations applicable to the case before us, which tend to show that the possession and not the interest was intended to be postponed.

1. There is no devise over of the legacy, showing any purpose in the testator that the legatee should not receive it at all events.

2. The postponement of payment is wholly for the benefit and convenience of the estate, and not upon any consideration personal to the legatee; and in such a case the deferring of the payment does not prevent the legacy from vesting. 1 Jarman on Wills, 756, 763. *Dawson* v. *Killet,* 1 Bro. C. C. 124. *Birdsall* v. *Hewlett,* 1 Paige, 32. *Harris* v. *Fly,* 7 Paige, 421. *Pinbury* v. *Elkin,* 1 P. W. 563. *Goulbourn* v. *Brooks,* 2 Y. & Coll. 539. *Marsh* v. *Wheeler,* 2 Edw. Ch. 163. *Bowker* v. *Bowker* 9 Cush. 519.

3. That interest is given until a legacy becomes payable, is one of the strongest indications of a vested legacy. *Hoath* v.

*Hoath,* 2 Bro. C. C. 3. *Hanson* v. *Graham,* 6 Ves. 239. *Stapleton* v. *Cheele,* 2 Vern. 673. It is true that interest is not here given *eo nomine;* but the direction for the payment semi-annually of the precise sum to which the interest on the principal legacy would amount, and that this payment should cease when the principal sum should be paid, is substantially to the same effect.

If we look at the apparent design of the testator, we are led to the same conclusion. If the legacy did not vest until the trustees were ready to pay it, then, in case of the death of the legatee leaving issue, it would lapse into the residue, and the equality intended among the testator's daughters would not be secured.

In considering the objections urged on behalf of the residuary legatees, the first and most important undoubtedly is, that, by the codicil, the payment of the $15,000 to each of the three daughters is required to be made out of a fund specifically designated, and that they are therefore in the nature of specific legacies; so that, the fund proving insufficient, the legacies must fail or abate. This objection has no bearing upon the question whether the legacies are vested or contingent, but, in the condition of the property, would materially affect the amount to be paid. But on looking at the will and codicil together, we are of opinion that the legacies are demonstrative, in reference to the fund primarily applicable to their payment, and not specific. By the will, the whole income of the estate, after the provision for the wife, is made chargeable with the creation of a fund for the payment of these legacies; and it was ample for the purpose. The testator then expressly declares that his executors shall "have a lien on all" his "estates and property such as the law gives them;" meaning certainly for the payment of debts, but very likely also for the satisfaction of specific legacies. He expresses his strong confidence — "that he has assumed" — that his personal property not specially devised, and the income of his real estate, would be sufficient, within a short time after his decease, to pay not only the annuity to his wife and the semi-annual payments to his three daughters, with the reservation

of the fund of $2000, but all his debts and testamentary expenses. But, as an additional resource, he authorizes his executors to sell certain specified lands, whether necessary for the payment of debts and legacies or not, and after payment of the debts and legacies to pay the remainder to his trustees to be invested for the same purposes as the residue of his estate. And that he supposes that the proceeds of the sales of land will be more than sufficient for the payment of debts and legacies is obvious from the further provision, that his trustees are authorized to make good any losses by fire from such proceeds. The codicil directs the trustees to provide for and pay his principal debts, and the three principal sums of $15,000 to his three daughters, from the proceeds of the sales of the real estate which he has authorized to be sold, and authorizes the trustees to negotiate a continuance of the indebtedness of the estate, in order to have ample time to make the necessary sales for that purpose. But while this shows a continued confidence that the value of the lands to be sold was ample to satisfy the payments thus charged upon them, we can see no evidence of intention to make the legacies to his daughters contingent upon the sufficiency of the fund. The fact that they are coupled with and put upon the same footing as debts would tend strongly to show that he did not mean to direct that they should be charged upon the sales of land exclusively. And as the power to negotiate a renewal of the principal debts would imply a power to make them a charge upon the whole estate in the hands of the trustees, it would seem to be the duty of the trustees to give a preference to the payment of the legacies, if they could be satisfied only from the sales of lands, to that of the principal debts, for which the whole estate would be liable. But we regard the effect of the codicil to be only to make the proceeds of the sales of land the fund primarily but not solely chargeable ; operating as a direction to the trustees rather than as a limitation of the legacy. See *Hartley* v. *Hurle*, 5 Ves. (Amer. ed.) 540, n. a.

Two other objections to the vesting of the legacy deserve consideration. First, it is argued that the provision for the husband of either of the daughters who should die with or

without issue is such as to prevent a claim under the will, beyond the proportion of the income of the residue to which he is entitled.  But we do not think the clause which makes provision for the husband has any application except to the share in the income of the residue.  Mr. Winthrop's claim is not for anything which the will gives him, but as administrator of his wife, for property belonging to her, to be administered and distributed according to law.  The right is the same as if the wife had survived the husband, and any other person were her administrator.  Secondly, it is urged that the legacy was contingent, because it was not an absolute legacy in money, but was to be paid to Mrs. Winthrop in money, or invested for her in the purchase of a house, at her election ; and that this election, not having been made in her lifetime, has now become impossible.  But we think that this election was not a condition of the legacy, but was merely a privilege as to the mode of payment; as if the testator had said : " I give to A. $15,000; and direct my executors to allow him, instead of money, to take it in such stocks belonging to my estate as he shall select, at their appraised value ; " or, " which I direct my executors to invest for him, as he shall order." The legacy is of the money, the fixed sum ; and the investment is to be of the legacy, after it has become payable, and is ready for payment.  The failure to make the election does not affect the vesting of the legacy in its original form.  A principle much analogous was applied in the case of *Curling* v. *May,* cited in 3 Atk. 255.  There A. had given £500 to B. in trust, that B. should lay out the same upon a purchase of lands, or put the same out on good securities for the separate use of his daughter H., her heirs, executors, &c. The testator died in 1729.  In 1731, the daughter H. died, before the money was invested in a purchase ; the husband, as administrator, brought a bill for the money against the heir of H., and the money was decreed to the administrator, for the wife not having signified any intention of a preference, the court would take it as it was found.  And see *Van* v. *Barnett,* 19 Ves. 102 ; *Wheldale* v. *Partridge,* 5 Ves. 388, and cases referred to in 1 Jarman on Wills, 523, n. 1.  It is noticeable

that the codicil does not allude to the investment of the legacy in a house.

The answer to the other points taken, that there was an election of the executors which of the legatees to pay first, and that the fund was insufficient, and therefore the legacy might fail, is given in the decision that the legacy is not exclusively chargeable upon the fund created by the sales of land.

Upon the whole matter, the judgment of the court is, that Mr. Winthrop, as administrator of his wife, is entitled to claim and receive the legacy of $15,000, and the semi-annual payments of $450 until the principal sum is paid, in the same manner as she would have been if she were now living, except that the election of an investment in real estate cannot now be made. A direction as to diligence in executing their trust cannot be given to the trustees under this bill.

*Decree accordingly.*