Garland *v.* Smiley.

---

HUGH GARLAND.

*v.*

ANN SMILEY et al.

1. Testator bequeathed $150 to A., charged on land devised by the will, and payable within two years after his death, provided she should be in good health and mind, and, in case she should not be in good health and mind, within three years after testator's death the sum should be paid to her three children, in equal parts, as they arrived at the age of twenty-one years, respectively.—*Held,* that where the alternative clause of the will came into effect by reason of A.'s insanity at the time of testator's death, and her failure to recover her reason within three years thereafter, the bequest, as to one of her children, lapsed, where he died before reaching the age of twenty-one years.

2. Where the other two children are minors, the person to whom the land on which the payment of the legacy is chargeable is devised may pay it into court, where it shall remain until the time at which, by the provisions of the will, it may be payable; *Rev. p. 1248,* providing for the payment into court of legacies charged by will on land, where the vesting of the legacy may be contingent.

On bill, answers, replication and proofs in open court.

*Mr. James R. Bowen,* for the complainant.

*Mr. John A. Dennin,* for the defendants.

GREEN, V. C.

This bill is filed by Hugh Garland, a son of James Garland, late of Jersey City, deceased, who was seized at the time of his death of an undivided half part of a certain tract of land in Second street in said city, complainant being the owner of the other undivided half of the tract mentioned. James Garland died June 16th, 1882, leaving a last will and testament, dated May 5th, 1882, which was duly admitted to probate June 30th, 1882. Among other things said will provided as follows :

"*Second,* I give and bequeath to my beloved son Hugh Garland, all my estate—that is to say, all my real estate situated in Second street in Jersey City aforesaid; to have and to hold the same to himself, his heirs and assigns forever, subject to the following conditions; that is to say, that my said son Hugh Garland shall pay to my beloved daughter Ann Smiley the sum of one hundred and fifty dollars, in case she shall be in good health and mind and shall pay the same within two years after my decease; and said bequest of one hundred and fifty dollars to my said daughter Ann Smiley shall be a charge on, and lien against, my said real estate until paid; and in case my said daughter Ann Smiley shall not within three years after my decease, be in good health and mind and shall not be paid the said one hundred and fifty dollars, for the use of and in trust for the children of my said daughter Ann Smiley, that is one-third part for each of said children to be paid to said children as they respectively arrive at the age of twenty-one years; this reference being to her three sons now living, and my said son Hugh Garland shall also pay to my daughter Mary McBride the sum of one hundred dollars, and this bequest shall also be a charge against and lien on said real estate until paid."

The complainant is the devisee named in this paragraph of the will. The $100 has been paid to Mary McBride as therein directed. The person referred to in the will as Ann Smiley is now and has, continuously, since 1881, been confined in the lunatic asylum at Snake Hill, in the county of Hudson, as a lunatic. She has not, therefore, within three years after the decease of

Garland *v.* Smiley.

James Garland, been "in good health and mind," as described in said will.

The three sons of Ann Smiley referred to in the will, to each of whom the one-third part of the said $150 should be paid, under the will, if their mother should not, within three years after James Garland's decease, recover her reason, and should not be paid the said sum, were James Smiley, Harry Smiley and George W. Smiley. James, at the time of the filing of the bill, was between eighteen and nineteen years of age; Harry, between sixteen and seventeen; George W. having died October 28th, 1890, being, at the time of his death, between thirteen and fourteen years of age. He left him surviving as his heirs-at-law and next of kin, his father, Henry Smiley, his mother, the said Ann Smiley, and his brothers, the said James Smiley and Harry Smiley, and his sisters, Theresa Ulrich, wife of William F. Ulrich, Ida Smiley and Gracie Smiley. Ida and Gracie Smiley are infants under the age of fourteen.

Complainant having been, at the time of the death of his father, the owner of an undivided one-half of the premises, the other one-half of which was devised to him by the will, files this bill against all parties whom he considers may have an interest in the estate, for the purpose of having their rights determined, and has paid into court an amount more than sufficient to pay the $150 and interest, if any is payable thereon.

Ann Smiley not having recovered her reason within three years after the death of the testator, the alternative condition of the will as to the $150 came into operation, namely :

"for the use of and in trust for the children of my said daughter Ann Smiley —that is one-third part for each of said children, to be paid to said children as they respectively arrive at the age of twenty-one years; this reference being to her three sons now living."

The last clause limits the bequest to the three sons living at the date of the will, and as the designation of one-third part for each, takes it out of so much of the rule which applies to bequests to a class, by which survivors could take the whole, it is practically a bequest of $50 each to the three grandsons, James,

Garland *v.* Smiley.

Harry and George W. With reference to the first two, their legacies are a charge on the real estate devised, payable at the time prescribed therefor, and do not bear interest except from the time of payment. The more serious question arises as to the bequest of the one-third of the $150 to George W. Smiley, who died during infancy. The bequest of the $150 to his daughter Ann is expressly declared by the testator to be a charge on and lien against his real estate until paid. This charge on the real estate is not relieved by the alternative condition of the bequest. All of the testator's real estate was devised to the complainant and charged with the payment of this amount.

If the $50 bequeathed to George W. had not been charged on the real estate, he having survived longer than three years after the death of the testator, the legacy would have vested in him, notwithstanding his death before twenty-one, and have passed to his legal representatives. This rule was adopted by courts of equity in compliance with the practice of the ecclesiastical court, which, in those matters, had concurrent jurisdiction. *1 Rop. Leg. (2d Am. ed.) 650.* When, however, the legacy was charged on real estate, such disposition not being within the ecclesiastical jurisdiction, courts of equity followed the common law, and the rule thus stated in *Hawk. Wills *234:*

"Legacies charged on land do not vest before the time appointed for payment, unless an intention appear to the contrary; thus a legacy to A. payable at twenty-one, charged upon land, fails by the death of A. under twenty-one."

See, also, *1 Rop. Leg. (2d Am. ed.) 650 et seq. ; 2 Jarm. Wills (5th Am. ed.) 834 ; 2 Wms. Exrs. (6th Am. ed.) 1252 ; 2 Redf. Wills 504 ; Beach Wills § 179 ; 13 Am. & Eng. Encycl. L. 42.*

Chancellor Walworth, in *Birdsall* v. *Hewlett, 1 Paige 32,* says: "It is undoubtedly a general rule that legacies charged upon the real estate, and payable at a future day, are not vested, and become lapsed if the legatee dies before the time of payment arrives. This rule was at first adopted without any exceptions and in direct opposition to that which existed in relation to the legacies payable out of the personal estate. This was done for the

benefit of the heir-at-law, who was a particular favorite of the English courts. I am not aware that it has ever been extended to a case where the estate was given to a stranger, upon the express condition that he pay the legacy charged thereon. The rule has long since been much narrowed down, even as between the legatees and the heirs-at-law." Lord Hardwicke, however, in *Prowse* v. *Abingdon, 1 Atk. 482* (at *p. 486*), says: "I have often heard it said that the reason why legacies charged on land, payable at a future day, shall not be raised if the legatee die before the day of payment, though it is otherwise in the case of a charge on the personal estate, is this, that the heir is a favorite of a court of equity and ought to have the preference of the representative of a legatee, and, likewise, that the court will go as far as they can in keeping the real estate entire and as free from encumbrances as possible. But I think the court has never gone upon such reason; but the true reason I take to be this, that the courts will govern themselves, so far as is consistent with equity, by the rules of the common law. In the case of personal estate, the rule is the same here as in the civil law, that there may be an uniformity of judgment in the different courts; but in the case of lands the rule of the common law has always been adhered to." The rule has been recognized in the cases of *Marsh* v. *Wheeler, 2 Edw. Ch. 163; Harris* v. *Fly, 7 Paige 421; Sweet* v. *Chase, 2 N. Y. 73; Stone* v. *Massey, 2 Yates 363,* and *Spence* v. *Robbins, 6 Gill & J. 507,* as well as *Birdsall* v. *Hewlett, supra,* although all these cases were brought within the exception to the rule which is thus stated in *Hawk. Wills 235:* "If the payment of the legacy is postponed for the convenience of the estate, and not for reasons personal to the legatee, the rule in general will not apply."

This distinction is thus explained in *2 Wms. Exrs. 1253:*

"When a legacy is bequeathed to a child on his attaining twenty-one or marrying, or on any other event personal to him, the legacy is evidently postponed to the time specified, from its being considered that the legatee will then want the benefit of the legacy. But when the estate is devised to a person for life, and after his decease is charged with the legacy, the legacy is evidently postponed until the decease of the devisee for life, from its being

incompatible with his life estate that it should be raised in his lifetime. The payment of the legacy is therefore considered to be postponed, in the first case from regard to circumstances personal to the legatee; and in the second from regard to the circumstances of the estate; and it has been inferred, that in cases of the first description the testator does not intend the legatee shall receive the legacy, unless the circumstance happens on which the testator made it payable; and that in cases of the second description, the testator intends the legatee shall receive it at all events. In the former cases, therefore, it has been held that if the legatee dies while the time of payment is in suspense, the legacy sinks into the land for the benefit of the inheritance; and in the latter cases it has been held that if the legatee dies during the continuance of the preceding estate or interest, his personal representatives will be entitled, on its determination, to have the legacy raised for their benefit."

Numerous cases arising under this exception will be found in the notes to the authorities cited and many of the cases collected in the decision of Lindley, L. J., in *Hentey* v. *Wrey, 21 Ch. Div. 332, 335 et seq.*

This legacy clearly does not fall within the exception to the rule, and I am therefore of opinion that, being charged upon the land and not payable until George W. arrived at the age of twenty-one, it never vested in him by reason of his death before he attained that age, and that the same has lapsed.

The situation of this estate and the proceedings already taken in the cause, bring it fairly within the act of 1875 (*Rev. p. 1248*), providing for the payment into court of the amount of legacies charged by any last will and testament, upon land and real estate, where the vesting of the legacy may be contingent, and its investment until the same may become payable under the terms of the will. I see no reason, therefore, for the appointment of a trustee, but think that, under this act, the fund may remain in court until the time at which, by the provisions of the will, the same may become payable.