## HARRIS vs. FLY and others.

Where the testator by his will devised his farm to his son, subject to the life
estate of his wife in a part of the same, and then gave to each of his two
daughters a legacy of $1000, to be paid by his son in six annual payments
from the death of his mother, and made the son also his residuary devisee
and legatee; *Held,* that the legacies to the daughters were an equitable
charge upon the farm devised to the son; the personal estate of the testator
being insufficient to pay the legacies.

Where an equitable charge upon the land devised is created by the will of the
testator, a subsequent purchaser from the devisee, who is obliged to make
title to the premises through the will, has constructive notice of the
charge, and takes the land subject thereto.

A charge of a legacy upon the real estate of the testator, either in aid of
or in exoneration of the personal property, may be created by implication.
And where the real estate is devised to the person who by the will is
directed to pay the legacy, in respect to such devise, or is devised upon con-
dition that the devisee pay the legacy, such real estate is in equity charge-
able with the payment of the legacy; unless there is something in the will
to rebut the presumption that the testator intended to charge the estate
devised.

The personal estate is the primary fund for the payment of debts and lega-
cies. And if the testator does not specify who shall pay the legacies, or
out of what fund they shall be paid, the presumption is that he intended it
should be paid out of the personal estate only. The result is the same
where he directs the executors to pay the legacies, and gives them no
other fund than the personal estate out of which to pay them.

Where the real estate devised is charged with the payment of a legacy, and
by the death of the legatee the devisee of the real estate becomes entitled
to the legacy, under the statute of distributions, there is an equitable mer-
ger of the charge; and a subsequent purchaser from the devisee will, in
equity, be entitled to hold the premises discharged of the lien of the legacy.

A legacy charged upon real estate becomes lapsed, by the death of the legatee
before the time appointed for payment, only in those cases in which the
payment was postponed by the testator in reference to the situation and
circumstances of the legatee; and not where it was postponed for the con-
venience of the estate, or of the person charged with the payment of the
legacy.

If a party to a suit in chancery wishes to protect himself as a bona fide pur-
chaser or mortgagee of real estate without notice of a prior equity, he
must deny such notice, in his bill or answer; so as to give the adverse
party an opportunity to put the fact in issue, and to prove it if he is able
to do so.

Where the complainant's claim to priority, in a mortgage case, is denied by
the defendant's answer, the master, upon the ordinary reference to compute

the·amount due upon the mortgage, previous to the hearing of the cause, under the 134th rule of the court of chancery, is not authorised to settle the question of priority between the parties, but must leave it for the decision of the court upon the hearing.

March 5.

THE bill in this cause was filed to foreclose a mortgage given by the defendant Fly, to the complainant, upon a farm in Greenbush; and the defendants, A. Drum and John Heaxt and wife, were made parties, on the ground of some supposed interest they had in the premises, or claimed to have therein, as prior incumbrancers under the will of Nicholas Drum, deceased. It appeared by the bill, and the answers of those defendants, that N. Drum, who died in 1815, was seized of the premises at the time of his death. By his will he devised the same to his son, A. Drum, in fee, subject to the life estate of his mother, the wife of the testator, in the south part of the dwelling-house, and in one third of the income of the farm, or so much thereof as she should want for her decent support, with fire-wood for one fire. He also gave to his widow two cows, six sheep, and the use of his household goods for life, with remainder to his two daughters after her decease. He then gave and *devised* unto each of his two daughters $1000, to be paid to them by his son, A. Drum, the devisee of the real estate, in six equal annual payments, the first payment to be made one year after the death of their mother. The testator also appointed his son and two other persons executors; and directed them to dispose of so much of his personal property as was necessary to pay his debts and the expenses of administration. And he then concluded his will as follows: " And finally, all the rest and residue of my estate and effects, real and personal whatsoever and wheresoever, not herein before mentioned, or otherwise effectually disposed of, (after payment of all my debts, legacies and funeral expenses, and other charges and deductions as aforesaid,) I give, devise, and bequeath unto my son, Aaron Drum." Upon the death of his father, the defendant A. Drum, entered into possession, under the will, and continued in possession until all his title and interest therein was sold by the sheriff, on a judgment and execution against him, in August, 1830, and purchased by

Fly, the mortgagee; to whom a deed was given by the sheriff after the time of redemption had expired. Peggy Drum, the sister of the devisee, died unmarried and intestate, soon after the death of her father; leaving her mother and brother and her sister, Mrs. Heaxt, her surviving, and the only persons entitled to any share of her estate. And the mother died on the 8th of October, 1837. The defendants, Heaxt and wife, by their answer claimed that the legacies to the daughters of the testator were an equitable lien upon the lands devised to the son, and that they were in the right of Mrs. Heaxt entitled to be paid her legacy out of the proceeds of the sale of the premises; and also the one half of the legacy of Peggy Drum, which half belonged to Mrs. Heaxt as one of the representatives of the legatee and of her mother, under the statute of distributions. And the defendant, A. Drum, made a similar claim for the other half of the last mentioned legacy. The master, to whom it was referred under the common order, entered in pursuance of the 134th rule, to compute the amount due to the complainant and to such of the defendants as were prior incumbrancers of the mortgaged premises, decided that these defendants were not prior incumbrancers on the mortgaged premises, although they by their counsel offered to prove that the testator did not leave sufficient personal estate to pay his debts, and that he left no real estate except the mortgaged premises. The cause was thereupon heard upon the bill and answers, and upon the master's report of the amount due upon the mortgage.

*J. Harris & S. Dutcher,* for the complainant.

*H. V. D. Van Epps,* for the defendants.

THE CHANCELLOR. The reference to a master previous to the hearing, to compute the amount due to the mortgagee and to prior incumbrancers, is only authorized to be entered where the rights of the complainant, as stated in the bill, are admitted by the answer. Where the defendants, therefore, by their answer, set up a claim of priority which is adverse

CASES IN CHANCERY.

to the claim of the complainant as made by his bill, the master is not authorized to settle the question of priority. If he makes any report whatever on the subject of such claim, therefore, he should merely ascertain the amount due upon the supposition that the claim of priority, as made by the answer, is well founded ; leaving it for the court, upon the hearing, to decide the question as to the legal or equitable rights of the defendants, upon the facts stated in their answers. The report of the master, in deciding the question that the legacies were not a lien upon the estate devised, was not authorized by the order of reference, and must be laid entirely out of the question in deciding this cause upon the bill and answers. It was proper, however, as to the absentees who had suffered the bill to be taken as confessed, to inquire and report as to the facts stated in the bill, upon which the legal questions arise, and which are all admitted in the answers of the defendants who had appeared.

The first question presented for the consideration of the court is, whether the legacies to the two daughters were either a legal or an equitable lien upon the devised premises. And it may be proper here to remark, so far as regards the claim of Mrs. Heaxt, that it is perfectly immaterial, whether the legacies were a legal or only an equitable lien. For as she was the heir at law of her father as to one third of the premises, and of her sister as to one half of another third, it is impossible for the complainant to make title to that half of the premises except through the will. And this was sufficient to charge him, and those through whom he claims, with notice of her equitable rights upon the premises, if she had any, under that will. Besides there is no allegation in the bill that Fly, at the time of his purchase under the judgment against A. Drum, or the complainant at the time of his mortgage from Fly, was ignorant of the existence of the will and of the equitable rights of the legatees, if they had any, under the same. And it is a rule of pleading in this court, that where a party wishes to protect himself as a bona fide purchaser or mortgagee without notice of a prior equity, he is bound to deny such notice, in his bill or answer ; so as to give the adverse party an opportunity to

put the fact in issue by his answer or replication, and to prove the existence of such notice, if necessary, where he is able to do so. Here the complainant, in his bill, sets out the will itself and all the facts upon which the equitable lien of the legatees, if any, arises ; and as he does not allege that either he, or Fly under whom he claims, acquired a legal interest in the premises without notice of the will, it was not necessary for the defendants to aver, in their answer, that the complainant and Fly were not bona fide purchasers without notice.

The testator does not in terms create an equitable charge upon the devised premises for the payment of the two legacies to the daughters. But that was not necessary ; as the charge of a legacy upon the real estate of the testator, either in aid of or in exoneration of the personalty, may be and frequently is created by implication merely. The personal estate is the primary fund for the payment of debts and legacies. If the testator therefore gives a legacy without specifying who shall pay it, or out of what fund it shall be paid, the legal presumption is that he intended it should be paid out of his personal estate only ; and if that is not sufficient the legacy fails. So if he directs his executors to pay a legacy without giving to them any other fund than the personal estate out of which they can pay it. But where the .real estate is devised to the person who by the will is directed to pay the legacy, it has frequently been decided that such legacy is an equitable charge upon the real estate so devised, although the devisee is also the executor, or is the residuary legatee of the personal estate ; unless there is something in the will itself to indicate a contrary intention on the part of the testator. Thus in the case of *Alcock* v. *Sparhawk*, (2 *Vern. Rep.* 228,) where the testator devised his real estate to his brother, and then gave a legacy of £200 to the complainant, to be paid by his executor within five years, and appointed the devisee the sole executor of his will, desiring him to see it performed ; it was held that the real estate devised to the brother was charged with the payment of the legacy, the personal estate proving insufficient for that purpose. (*See also Aubrey* v. *Middleton*, 2 *Eq. Ca. Abr.*

497; *Clowdsley* v. *Pelham*, 1 *Vern. Rep.* 411; *Elliott* v. *Hancock*, 2 *Id.* 143; 2 *Story's Eq.* 494, *note* 2.)   In the case of *Webb* v. *Webb*, (*Barn. Ch. Rep.* 86,) where the testator in terms charged all his real estate with an annuity to his eldest son, and an annuity to his wife for her jointure; and devised a part of his real estate to his second son in strict settlement, and the residue of his real and personal estate to the same son in fee, and then directed that the said son should pay and discharge all debts and sums of money which the testator should owe at the time of his death, and all the legacies and sums of money bequeathed by his will, and gave certain legacies to his younger children; Sir Thomas Parker, sitting for the lord chancellor, decided that the real estate devised in strict settlement was charged with the payment of these legacies to the younger children, that being the only real estate undisposed of at the time of the testator's death.   In that case, as in the one now under consideration, there was no express charge of the legacies to the younger children upon the testator's real estate; but the charge was implied from the fact that the second son, to whom the real and personal estate were devised, was directed to pay those legacies.   The subsequent case of *Lypet* v. *Carter*, (1 *Ves. sen.* 499,) decided by Sir John Strange the master of the rolls, in 1750, is also very similar to the one now under consideration. In that case, as in this, the testator commenced his will with a declaration of his intention to dispose of his worldly estate, and gave a legacy of £100 to his daughter, which he directed his executor to pay, within a month after the decease of the mother, to whom he gave a life interest in his real estate, with remainder to his only son in fee. And he gave his residuary estate also to his son and made him his executor, and appointed two other persons trustees and overseers of his will.   And though the son renounced the execution of the will, upon its being admitted that the personal estate was insufficient to answer the charge it was held that the legacy must be raised out of the sale of the real estate devised to the son, who by the will was directed to pay the legacy.   In the present case the legacies to the daughters are not wholly charged upon the farm, specifically

devised to the son who is directed to pay them, any more than in the case of *Lypet* v. *Carter*. For here, as in that case, the residuary estate which was also given to the son was likewise chargeable, and was the primary fund for their payment. And the son who has accepted of the estate devised is also personally liable for the payment thereof. Still there is an equitable charge upon the real estate if there is no other fund out of which the legacy can be paid. (*See also Hassel* v. *Hassel*, 2 *Dickens*, 527.) The rule as to the equitable charge upon the estate devised if the same where the real estate is devised, either to the heir at law or to a stranger, upon condition that he pay the legacy. In the first case, although the devise to the heir is void, at law, yet in equity it is good as an equitable charge upon the land of the heir who is directed to pay it. (*Smith* v. *Atterby*, 3 *Rep. in Ch.* 93. *Freem. Ch.* 136, *S. C.*) And in the other case, where the devise is to a stranger upon condition to pay the legacy, though the legatee cannot enter, yet this court will convert the heir at law into a trustee for the legatee, for the purpose of charging the land with the payment of the legacy. Upon a full examination of the authorities, therefore, I am satisfied that where real estate is devised upon condition to pay a legacy, or with a direction to the devisee to pay the legacy in respect to the estate so devised to him, and because that real estate has thus been devised, such real estate is in equity chargeable with the payment of the legacy, unless there is something in the will to rebut the legal presumption; or from which it can be inferred that the testator intended to exempt the estate devised from that charge.

If the devisee in this case had sold the premises for cash, and had received the purchase money, a question might have arisen whether the vendee was bound to see that the purchase money was applied to pay off the legacies. No such question can arise, however, in the case of a sale on execution, against the devisee, for the payment of a debt to a third person; as the purchaser, from the very nature of the transaction, has notice that the purchase money is not intended to be applied to pay off the legacies. And the purchaser claiming his title through the will, and having there-

by a constructive notice of its contents, he takes the estate subject to the equitable claims of the legatees thereon.

It is insisted, however, by the complainants' counsel that as Peggy Drum, one of the legatees, died before her legacy became payable according to the terms of the will, it became lapsed for the benefit of the devisee of the estate. It is unquestionably settled, as a general rule, that where there is a legacy chargeable on land, and payable at a future day, the same becomes lapsed if the legatee dies before the time appointed for its payment. The leading case on this subject is *Poulet* v. *Poulet,* (1 *Vern. Rep.* 204, 323,) decided by Lord Guilford, and afterwards affirmed upon appeal to the House of Lords. The rule was originally applied to the case of portions directed to be raised for younger children, upon their coming of age or being married. And so long as it was confined to such cases, the courts probably did no direct violence to the intention of the testator; though, even in the relation to such portions, there does not appear to have been any good reason for holding that so much of the legacy or portion as was payable out of the personal estate was vested and payable, and as to the part thereof which could be satisfied only out of the real estate on account of a deficiency of the personalty, that the testator did not intend it should be raised in the event which had occurred; when the language of the will, which was the only evidence of his intention, was the same as to both. It is certainly difficult to reconcile some of the cases that were decided within the first fifty or sixty years after the decision in Lord and Lady Poulet's case, with others which were decided before or since that time. The case of *Innocent* v. *Taylor*, decided by Lord Finch of Daventry, afterwards the Earl of Nottingham, in 1673, (*Cases Temp. Finch*, 112,) certainly is in conflict with many of the cases subsequently decided on this subject. And although Lord Hardwicke pronounces the book in which this case is reported a book of no authority, he admits there are several cases, decided about the same time when *Innocent* v. *Taylor* is said to have been decided, containing similar principles. (1 *West's Rep.* 504.) And it now seems to be settled, as a general restriction of

the rule that a legacy charged upon real estate becomes lapsed by the death of the legatee before the time appointed for payment, that the legacy only lapses where the payment is postponed by the testator in reference to the situation or circumstances of the legatee personally, and not where it is postponed for the convenience of the estate or fund out of or in reference to which it was given. This distinction was glanced at by Lord Hardwicke, in *Lowther* v. *Condon*, (2 *Atk. Rep.* 128;) and it was acted on in many other cases which are referred to in Mr. Saunders' note to that case. It was also distinctly recognized by Baron Alderson in the recent case of *Goulbourn* v. *Brooks*, (2 *Young & Coll. Rep.* 539,) as a settled rule of law, that if the payment of the legacy is postponed for the convenience of the estate, and not as a condition annexed to the person of the legatee, the legacy does not lapse by his death before the time appointed for its payment. The same principle was also recognized by that distinguished equity judge, Sir John Leach, the late master of the rolls, in *Murkin* v. *Phillipson*, (3 *Myl. & Keen's Rep.* 261.) And the true rule, as it now exists both here and in England, in respect to the vesting of legacies payable out of real estate, is thus correctly laid down by the present learned vice chancellor of the first circuit, in the case of *Marsh* v. *Wheeler*, (2 *Edw. Ch. Rep.* 163:) "Where the gift is immediate but the payment is postponed, for instance until the legatee attains the age of twenty-one years or marries, there it is contingent, and will fail if the legatee dies before the time of payment arrives; but where the payment is postponed in regard to the convenience of the person and the circumstances of the estate charged with the legacy—and not on account of the age, circumstances, or condition of the legatee—in such a case it will be vested and must be paid, although the legatee should die before the day of payment."

In the case under consideration, it is perfectly evident that there was nothing in the situation of the legatees themselves which required the postponement of the payment of their legacies. One of them was already married; and although the age of the other does not appear, it is

probably she was not in her infancy, as no provision what-
ever is made for her support during the life of the mother.
The testator, therefore, instead of dividing his property
equally among his children at the time of his death, gives a
portion thereof to his widow for life, and the residue to his
son in fee subject to the payment of these pecuniary lega-
cies to his sisters.   And the payment of these legacies was
unquestionably postponed for his benefit, and for the benefit
of the estate devised to him ; so that they should not be-
come due and payable until he had a reasonable time to raise
the money after he should come into the full possession and
enjoyment of the estate.   These legacies therefore became
absolutely vested in the legatees at the death of their fa-
ther, though payable at a future day.   And upon the death
of Peggy Drum, in 1816, her legacy survived to her per-
sonal representatives, for the equal benefit of her brother
and sister and her mother who were entitled to the same
under the statute of distributions.   And upon the death of
the mother in 1837, her share of the daughter's legacy sur-
vived to her personal representative, for the benefit of those
who were entitled to a distributive share of her estate.
Mrs. Heaxt is therefore entitled to be paid the amount of
her legacy of $1000, with interest on the first payment from
the end of one year from the death of her mother and dis-
counting the interest on the payments which have not be-
come due, which together with her costs must be first paid
out of the proceeds of the mortgaged premises.   She also,
through the personal representatives of her sister and mother,
will be entitled to the one half of the legacy which was giv-
en to her deceased sister.

The defendent A. Drum, however, has no claim either at
law or in equity for the other half of that legacy.   By the
will, the payment thereof is charged upon him personally ;
and he has received the land as an equivalent for the pay-
ment thereof, although for the protection of the rights of
the legatees this court gives them an equitable lien upon
the land itself as an additional security.   As the personal
representative of the deceased legatee, therefore, would
have the right to resort to him personally for the payment

of this legacy, this court would never permit such representative to enforce the payment of the legacy for his benefit, by charging it upon the land in the hands of a purchaser under him. But on the contrary, as he has accepted the devise and is therefore primarily liable to pay these legacies, if they are charged upon the land for the benefit of others the owner of the land has an equitable claim to a remedy over against him for the amount which may be so charged.

There is a technical difficulty in this case in disposing of the charge as to the legacy of the deceased sister, from the fact that neither her personal representative nor the representative of the deceased mother are before the court. The premises must therefore either be sold subject to the equitable lien of so much of that legacy as does not in fact belong to A. Drum as a distributee of his sister's and of his mother's estates; or the amount of that legacy must be brought into court, to be hereafter disposed of according to equity when such personal representatives are appointed. But in neither event is the defendant A. Drum entitled to costs. And there must be a reservation in the decree of a right to the complainant, or to any of the other defendants who are interested in the land, to apply to the court for such decree over against him as may be just as between him and them.

The master's report is confirmed, except so much thereof as assumes to settle the question as to the prior lien of the legacies. And as the amount of the legacies is a matter of mere computation, a decree for a sale may be immediately entered, containing the proper directions as to the distribution of the fund in conformity with this decision, and reserving such directions as cannot now be given. The payment of what is due to Mrs. Heaxt must be subject to the usual restriction, to protect the wife's equity against the husband or his creditors.

Decree accordingly.