## LODER v. HATFIELD.

*Will — construction of. Legacy — when it does not lapse. Interest — on unpaid legacy.*

A will contained this : " I direct my son J. to pay unto my daughters H., E. and S. $400 each, which I give and bequeath to them and their heirs forever." The payment of this was charged on a farm given by the will to J. The will contained in another clause this : " I direct that my daughters shall live with J. and have a support off the farm; and the money I have bequeathed them to be paid in one year after they shall severally marry, or be inclined to leave J. and live elsewhere." *Held,* that the time given for the payment of the legacies was for the benefit of the estate, and they did not lapse and fall into the inheritance by the death of the legatees without marrying or departing from the devisee during life.

An action for a legacy against the devisee of land charged with its payment, or his heirs, is, in its nature, equitable, and may be commenced at any time within ten years after the cause of action accrues.

Interest upon a legacy charged upon land yielding profits *held* allowable, although the legacy was not demanded when due.

APPEAL by defendants from a judgment in favor of plaintiff entered upon the decision of the court.

The action was brought by Hannah Loder, as administratrix, etc., of Eunice Hatfield, deceased, against Gilbert J. Hatfield and others, to recover two legacies. The facts were these :

Joshua Hatfield died August 7, 1820, leaving a will by which he devised the farm upon which he lived to his son Jonathan Hat-

field, the husband of one of the defendants, and father of the other defendants, "on the following conditions and proviso," among others : "I order and direct my said son Jonathan to pay unto my three daughters, Hannah, Eunice and Sarah, $400 each, which I give and bequeath to them and their heirs forever." * * *

" And, furthermore, I order and direct that my four daughters, Phebe, Hannah, Eunice and Sarah, shall live with Jonathan and their mother, and to have a support off the farm, and to assist as usually they have done in carrying on the business in the house, and the money I have above bequeathed to them to be paid in one year after they shall severally marry or be inclined to leave Jonathan and their mother, and live elsewhere."

The legacies to the daughters Phebe and Hannah (the plaintiff) were paid by Jonathan. Sarah and Eunice remained unmarried, and resided on the farm until they died, aiding in the work.

Jonathan accepted the farm devised to him, entered into possession, and owned and occupied it till his death in January, 1870. He devised the farm to his wife, for her life ; remainder in fee to his sons, the other defendants. Sarah Hatfield died May 8, 1856, having, on December 13, 1855, assigned her $400 legacy to her sister Eunice. Eunice died August 19, 1871, intestate, and owning both the legacy given to herself and that given to Sarah, neither of which was ever paid.

Letters of administration were duly granted to the plaintiff by the surrogate of Westchester county.

The court at special term decided that the legacies to Sarah and Eunice were valid, vested a charge on the land, and due and unpaid, and ordered judgment of sale to pay the legacies and interest thereon from a year after the death of Sarah and Eunice, respectively, with costs.

*Close & Robertson*, for appellants.

*Edward Wells*, for respondent.

Present— DAVIS, P. J., BRADY and DANIELS, JJ.

BRADY, J. It is conceded by the appellant that the legacies to Sarah and Eunice are payable out of the real estate of the testator,

and that if the payment of them is postponed in regard to the convenience of the person and the circumstances of the estate, charged with the legacies, and not on account of the age, circumstances and condition of the legatee, or, in other words, was postponed for the benefit of the devisee or the estate devised to him, then they did not lapse and fall into the inheritance either by the death of the legatees before marriage or their failure to depart from the house of the devisee during life. The concession is based upon the authorities which thus declare the rule. *Harris* v. *Fly*, 7 Paige, 421, 430; *Marsh* v. *Wheeler*, 2 Edw. Ch. 156, 163; *Sweet* v. *Chase*, 2 N. Y. 73; *Birdsall* v. *Hewlett*, 1 Paige, 32; Willard's Eq. Juris. 519.

The application of the rule thus stated depends upon the circumstances of each case. If the condition were annexed to the legacy, and not its payment, the rule would in general be more in harmony, it would seem, with the intent of the testator. It may be that the gift and the time of its payment are necessarily united, and are the same, therefore, in legal effect, but there are cases, not in the courts of this State, in which the doctrine is promulgated that unless the condition or contingency applies to the legacy itself the direction of its payment at a future day does not affect it, and it vests immediately. The rule itself, as pronounced in this State, must necessarily rest upon the supposed intention of the testator, which is a governing principle in the construction of wills, and is generally called into exercise where the payment of the legacy is deferred until the marriage of the legatee, or until he arrives at age. It is, nevertheless, qualified by circumstances affecting either the legatee or the devisee in reference to the payment of the legacy, as we have seen. See cases *supra:*

The question here, therefore, on that subject, neither contingency in reference to payment having occurred, is whether the postponement of payment was for the benefit of the estate or the devisee. The legacies are, by the terms employed, absolute in character. "I order and direct my said son, Jonathan, to pay unto my three daughters, Hannah, Eunice and Sarah, four hundred dollars each, which I give and bequeath to them and their heirs forever," and were charged upon the farm or homestead given to Jonathan, which he took upon the express condition or proviso that he should pay the legacies.

The gift is in the first paragraph of the ........ ceeding the pro-

viso. In the second paragraph and therefore not immediately connected with the gift, the provision in reference to the time when the legacies shall be paid is found. That paragraph begins: "And, furthermore, I order and direct that my four daughters, Phebe, Hannah, Eunice and Sarah, shall live with Jonathan and their mother, and to have a support off the farm and to assist as usually they have done in carrying on the business in the house, and the money I have bequeathed them to be paid in one year after they shall severally marry or be inclined to leave Jonathan and their mother and live elsewhere."

It will be perceived that the testator alludes to the legacies not as such *eo nomine,* but as the money he has bequeathed them, which is to be paid when they marry or determine to leave their mother and live elsewhere, and thus re-affirms the intention that the legacy to each should be paid and not be contingent upon any event. The phrase "the money I bequeath them," coupled with the words "four hundred dollars which I give and bequeath to them and their heirs forever," leave no room for conjecture from the language employed as to the intent of the testator to give his daughters, under any and all circumstances, a vested legacy in the sum named.

This intention is one which the courts would not fail to carry out unless there was some other feature of the will a controlling legal element to the contrary. See *Sweet* v. *Chase, supra;* also *Terril* v. *Pub. Admr.,* 4 Bradf. 245. It is necessary here, nevertheless, to consider whether the postponement of payment, or rather the time allowed the devisee to pay the legacies was or was not for his benefit. It seems to be evident that the question depends much upon the character of the bequest. Here, as we have seen, it seems to be in form a vested and absolute legacy. The payment of it in one year after the legatee should marry or be inclined to leave the devisee and her mother was not for the benefit of the legatee, but, as asserted by the plaintiff, for the benefit of Jonathan, the devisee, so that he should not be burdened with the support of the legatees and the payment of the legacies at the same time. It was for his benefit, also, because it gave him one year, after such support had ceased to be obligatory upon him by the marriage or departure of the legatee, within which to pay the legacy.

This was not a provision in reference to the circumstances of the legatees. There was nothing in the surroundings or condition

of the legatees which required any precaution as to the payment or the consideration of any circumstances which made it advisable to expedite the payment on their account. They were provided for. They were to live at the homestead, if they chose to do so, and to be supported there by the devisee, who took the devise burdened with that obligation, although they were to assist as before, "in carrying on the business in the house," and thus, to a certain extent, earn their support.

With regard to the devise, however, a different view is presented. It may be assumed with propriety, that the circumstances of the estate or those of the devisee were such as to make it advantageous to have a year to gather up and pay the legacies, which would become payable by either of the contingencies expressed. This would appear to be so, because the devisee could not, by the terms of the will, sell the estate, or his interest in it, until the death of his mother, the testator's widow, and not having any power to sell, he would be compelled to get the money from other sources. The testator, though he charged the land with the payment of the legacies, intended that on the happening of either contingency named, and within one year thereafter, they should be paid, whether the land was sold or not.

It would seem, therefore, that duly considering the bequests made, the circumstances and condition of the legatees, and the circumstances of the estate and of the devisee, that the time given for the payment of the legacies was designed for the benefit of the estate, and not of the legatees of the money, and they did not, therefore, lapse and become a part of the inheritance.

The legatee, Sarah Hatfield, died on the 8th of May, 1856, but this action was not commenced until the 15th of May, 1873, and it is said that the claim is barred by the statute of limitation. The statute of limitation does not in terms specify the time within which an action must be brought to recover the amount of a legacy, but it has been declared, and it seems to be sustained by the provisions of the statute, that it must be brought within ten years from the time it becomes payable. *McCartee* v. *Camel*, 1 Barb. Ch. 455. The Revised Statutes provided that whenever there was a concurrent jurisdiction in courts of common law and in courts of equity of any cause of action, the time limited for the commencement of such cause of action in a court of common law should apply to all suits brought for the same cause in the Court of

Chancery. 2 R. S. 301, § 49. But if it was a case where the Court of Chancery alone had jurisdiction the suit should be commenced within the time prescribed for the commencement of suits of the same character in equity, the subject-matter of the suit not being cognizable in the courts of common law. 2 R. S. 302, §§ 51, 52, 53; *McCartee* v. *Camel*, 1 Barb. Ch. 455, *supra; Clark* v. *Ford*, 3 Keyes, 372. The Revised Statutes also declared that bills for relief in equity, in all cases not provided for in chapter 4, " of actions and the times of commencing them," should be filed within ten years after the cause thereof should accrue and not after. 2 R. S. 301, § 52.

This action is one on the equity side of the court praying the sale of the premises for the payment of the legacies with which they were charged, assuming them to be, as indeed they are, an equitable charge upon the estate devised. Willard's Eq. Jur. 489; *Harris* v. *Fly, supra.* The case of *McCartee* v. *Camell, supra,* was commenced before the Code of Procedure was adopted.

The 73d section of the Code repealed the provisions contained in the chapter 4, *supra,* " of actions and the times of commencing them," and substituted the provisions of title 11 of the Code, entitled, " of the time of commencing actions." There are many causes of action specifically designated in this title, but the action by a legatee is not one of them, and there is not, therefore, any express limitation as to such action contained therein. There is not in that title any reference, *eo nomine,* to equitable actions or actions of an equitable nature, but there is a provision similar to that contained in the Revised Statutes, and to which reference has been made herein, and which is as follows: § 97. " An action for relief not hereinbefore provided for must be commenced within ten years after the cause of action shall have accrued."

It would thus appear that both by the Revised Statutes and since the Code, this action, on account of its nature, is one which must be brought within ten years after the action accrued. An action to enforce an equitable remedy must be brought within ten years, under section 97 of the Code. *Miner* v. *Beekman,* 50 N. Y. 338; *Hubbel* v. *Sibley,* id. 468.

The cognizance of legacies was confined in England to ecclesiastical and equity courts, and the common-law courts did not assume jurisdiction in suits for legacies except upon an express promise by an executor, in consideration of forbearance. *Dewitt* v.

*Schoonmaker*, 2 Johns. 243.   Or unless there be evidence that the personal representative holds the money, not as executor or administrator, but in his individual character, upon a new contract for a loan of it to him.   Chitty on Pl. 114 (6th Am. ed.); *Rundle* v. *Allison*, 34 N. Y. 183.   But our statute (Laws 1801, Webster & Skinner's Ed., chap. 174, § 18) provided that an action might be brought if there were sufficient assets in the hands of the executor to pay the debts and the legacies; and the Revised Statutes (2 R. S. 114, § 9) provide that if there be more than sufficient assets in the hands of the executor or administrator to discharge the debts of the testator or intestate, a legatee, after the expiration of one year from the time of granting of letters testamentary or of administration, and after a reasonable demand made, and on executing a bond such as designated, may commence an action to recover the legacy against the executor or administrator.   These provisions conferred jurisdiction upon the common-law courts to entertain actions for legacies against executors and administrators; but this is not such an action.

The remedy given against the executor or administrator therefor, founded upon the statute, is one which must be pursued within six years after the cause of action accrues.   *Frost* v. *Frost*, 4 Edw. Ch. 733; *Clark* v. *Ford, Rundle* v. *Allison, McCartee* v. *Camell, supra.*   It is based on the assumption that there are sufficient assets to pay the legacy.

When the action is against the devisee of the land charged with the payment of the legacy, or his heirs, as in this case, and not against the executor or administrator, it is, as already stated, one in its nature equitable, and may be commenced at any time within ten years after the cause of action accrues.

If there were, during the six years, sufficient assets in the hands of the executor or administrator to pay the legacy, and such fact were set up as an answer to the claim of the legatee, it would perhaps require the consideration of a question that does not arise here.   The action is, as suggested, against the heirs of the devisee, and not against the executor or administrator of the testator.

There is no question about the right of the plaintiff to the legacy of Eunice unless it lapsed.   The action as to that was commenced in time.   It is claimed, however, that no interest should be given. The right to it has been settled.   The land of which the defendants became the owners was charged with the payment of the legacy,

and they took it *cum onere*.  *Harris* v. *Fly*, 7 Paige, 421.  And the land yielding profits, the payment of interest upon the legacy is just and reasonable, though not demanded when due.  *Glen* v. *Fisher*, 6 Johns. Ch. 33 ; *Berdsall* v. *Hewlets*, *supra*.  It should be computed from the 8th of May, 1857, which was one year after the death of Eunice.  The testator contemplated that a period of one year should elapse after the legacy became due before its payment could be enforced.

The judgment must, therefore, be affirmed as to the legacy given to Eunice, and reversed as to the legacy given to Sarah, without costs to either party.

*Ordered accordingly.*