## O'BRIEN *v.* DOUGHERTY.

WILLS ; SURVIVORSHIP ; JOINT TENANCY ; LEGACIES CHARGEABLE
UPON REAL ESTATE.

1. Words of survivorship in a devise after a particular estate, in the absence of a clear intention to the contrary, refer to the death of the testator and not to the termination of the particular estate.
2. Where a devise is to a class of heirs, one member of which is disqualified from taking by reason of having been an attesting witness of the will, the estate vests as an entirety in the members of the class capable of taking it, as if the disqualified member did not exist.

3. And the estate so vests whether the devise be to the class as joint tenants or tenants in common.

4. If a devise be to the surviving children of the testator generally, without any expression of an intent that they shall take as tenants in common, they take as joint tenants, with the incidental right of survivorship among them.

5. Where a pecuniary legacy was made payable *out of the estate* of the testator after the death of his wife, who was sole executrix, devisee and legatee, and the personal estate was of small amount and of a character likely to be rendered valueless by the life-long use by the widow : *Held*, That the legacy was a charge upon the real estate after her death.

No. 37. Submitted June 1, 1893.—Decided September 21, 1893.

HEARING on appeal by the defendants from a decree of the Supreme Court of the District of Columbia, holding an equity term, construing a will and decreeing sale of real estate. *Reversed.*

THE COURT in its opinion stated the case as follows:

In this case the bill was filed by Margaret Dougherty, a legatee under her grandfather's will, to enforce a charge on certain real estate, and as sole heir-at-law of her deceased mother, asserting an alleged inherited interest in the same real estate, and asking for the sale thereof.

It appears that Rodey O'Brien, the grandfather of the complainant, died in March, 1871, seized of a certain parcel of real estate, being part of lot No. 2, in square No. 344, in the city of Washington, and by his last will and testament, which was duly admitted to probate, he devised that, and all the rest of his property, to his wife, Mary O'Brien, for her life. A copy of the will is exhibited with the bill, and the clauses that are material to this case are as follows:

" Item: To my granddaughter, Margaret Dougherty, I give and bequeath two hundred and fifty dollars out of my estate, after the death of my dear wife.

" Item: And whereas, the property I now possess hath been acquired by the joint industry of my dear wife and myself, I do therefore give and bequeath to my dear wife, Mary O'Brien, of the city of Washington and District of Columbia, all the property of which I may die possessed or in expect-

ancy, both real and personal, wherever found; also all papers, documents, powers of attorney standing in my name or signed by me; and all my right, title and interest in and to the same during her life, she paying the taxes thereon as they may become due from time to time, and after her death to revert to my surviving children."

The testator left surviving him his widow, the devisee and legatee for life, and five children, namely, Daniel O'Brien, Luke O'Brien, Mary Ellen O'Brien, Sarah Mulloy, and Ann Dougherty, the latter the mother of the complainant. The widow died in February, 1890. Ann Dougherty died in August, 1884, intestate, leaving the complainant her sole heir-at-law. Sarah Mulloy died in June, 1890, intestate and without issue.

It is charged in the bill that Daniel O'Brien, one of the surviving children, was one of the attesting witnesses to the will of the testator, and therefore any devise of real estate to him by the will is void, and that, as to such interest, Rodey O'Brien died intestate, and it descended to his heirs-at-law.

In her bill the complainant sets up claim and asserts right in herself as follows:

1. That as sole heir of her mother, she is entitled to one-fifth of the estate of her grandfather, Rodey O'Brien.

2. That, claiming as heir through her mother, she is entitled to one-fourth share of the interest of Sarah Mulloy, under the will of Rodey O'Brien.

3. That, as heir of her mother, she is entitled to one-fourth interest in the share devised to Daniel O'Brien, by the will of his father, but which was void under the statute.

4. That the legacy given her by the will is a lien or charge upon the real estate of the testator. And she alleges that the property cannot be divided, and she therefore prays that it may be sold, the legacy paid, and the residue of the proceeds of sale divided according to the rights of the parties.

The defendants by their answer admit the material facts alleged in the bill, but they controvert the legal conclusions deduced therefrom, and deny all the claims and pretensions

of the complainant, and, consequently, deny her right to maintain the bill.

It is admitted that the personal estate of the testator, consisting of household effects, was worth less than $500; that it was taken possession of by the widow, the sole executrix and legatee for life, and that it was taken from the District of Columbia by the widow, and has never been accounted for by her.

The court below sustained all the claims and pretensions of the complainant, and decreed a sale of the property, and hence this appeal.

*Mr. R. Ross Perry* and *Mr. Charles A. Elliott* for the appellants :

1. Where there is a devise to one for life and then to the surviving children of the testator, those children of the testator who are surviving at the death of the life tenant, will take to the exclusion of the representatives of those who are then dead. English cases: *Cripps* v. *Wolcott*, 4 Madd., 12; *Horne* v. *Pillans*, 2 M. & K., 15; *Wordsworth* v. *Wood*, 2 Beav., 28; *In re Gregson's Estate*, 2 De. G. J. & S., 438; *Mariot* v. *Abell*, L. R. 7 Eq., 478. House of Lord's cases: *Wordsworth* v. *Wood*, 1 H. of L. cases, 129; *Young* v. *Robertson*, 8 Jur. N. S., 825; *Taafe* v. *Cornell*, 10 H. of L. cases, 64. American cases: *Phinizy* v. *Foster*, 90 Alabama, 262; *Hulburt* v. *Emerson*, 16 Mass., 244; *Olney* v. *Hull*, 21 Pickerering, 311; *Denny* v. *Kettell*, 135 Mass., 138; *Coveny* v. *McLaughlin*, 148 Mass., 576; *Terrill* v. *Sayre*, Pennington, 598; *Seddel* v. *Wills*, Spencer, 223; *Williamson* v. *Chamberlain*, 2 Stockton, 373; *Holcomb* v. *Lake*, 4 Zabriskie, 686; S. C. 1 Dutcher, 605; *Slack* v. *Bird*, 8 C. E. Green, 238; *Biddle* v. *Hoyt*, 1 Jones' Eq. (N. C.), 162; *Hilliard* v. *Kearney*, 1 Busbell's Eq. (N. C.), 221; *Knight* v. *Knight*, 3 Jones' Eq. (N. C.), 167; *Walker* v. *Johnston*, 70 N. C., 578; *Schoppert* v. *Gillam*, 6 Richardson's Eq. (S. C.,) 83; *Wessenger* v. *Hunt*, 9 Richardson's Eq. (S. C.), 459; *Anderson* v. *Smoot*, Speer's Eq. (S. C.), 312; *Roundtree* v. *Roundtree*,

26 S. C., 450; *Wren* v. *Hynes, Adm'r*, 2 Metcalf (Ky.), 129; *Hughes* v. *Hughes*, 12 B. Monroe, 115; *Sinton* v. *Boyd*, 19 Ohio St., 30; *Smith* v. *Block*, 29 Ohio St., 488; *Ridgway* v. *Underwood*, 67 Ill., 419; *Blackford* v. *Newberry*, 99 Ill., 44; *Robertson* v. *Wilson*, 38 N. H., 48; *Hill* v. *Rockingham Bank*, 45 N. H., 270; *Tucker* v. *Stites*, 10 George (Miss.), 212; *Westbrook* v. *Romeyn*, Baldwin C. C. R., 196; *Jenkins* v. *Freyer*, 4 Paige's Ch. 53; *Cropley* v. *Cooper*, 7 D. C. Repts., 226. Text-books: 3 Jarman on Wills (5th Am. from 4th London ed.), pp. 571-598; 2 Williams on Executors (6th Am. ed.), p. 1575 [1465]; 2 Redfield on Wills (2d ed.), p. 587.

2. By the terms of his will the testator Rodey O'Brien devised his estate to his children in remainder *as a class* and not *nominatum*. This would vest the estate in the children as joint tenants and not as tenants in common. Therefore, upon the death of Mrs. Dougherty they acquired the *entire* interest, so that the complainant can assert no claim to or interest in the real estate as heir-at-law of her mother; and the same doctrine would apply in the case of Mrs. Mulloy, the title at her death vesting in the remaining joint tenants.

3. Daniel O'Brien being a witness of the will, any devise to him was void, and the devise to him enured to the benefit of the other joint tenants, for it is settled that if a devise to joint tenants fail as to one, the other or others will take the whole. 3 Jarman on Wills, 17; *Young* v. *Davies*, 2 Dr. & Sm., 167. The rule would be different where the devise merely lapsed, but if the devise be void, such interest passes to the surviving joint tenants.

4. The $250 legacy to the complainant is not made a charge upon the real estate in express terms, and even if it be conceded that the real estate is liable for its payment, still we contend that it is only answerable after the *personal* estate shall have been exhausted. The payment of general legacies is to be made primarily out of the personal estate, unless the will in distinct terms exonerates it and charges the realty. 2 Jarman on Wills, 652; Roper on Legacies, 696; *Hilton* v. *Hilton*, 2 McA., 70, 88, 89; *Lupton* v. *Lupton*,

2 Johns. Ch. 614. In the case at bar, the testator left sufficient personal estate to satisfy the legacy.

*Messrs. Gordan and Gordan* for the appellees :

1. In the will of Rodey O'Brien, the language " and after her [the life tenant's] death, to my surviving children," vested the estate at once in the children who survived the testator. This contention is in accord with the better authorities in this country. The English rule, prior to the decision of *Cripps* v. *Wolcott*, 4 Madd., 12, undoubtetdly was, that the words of survivorship in devises of this character, in the absence of a manifest intent that they should be otherwise applied, would be considered as relating to the death of the testator. In all the cases, notwithstanding that a previous life estate was given, survivorship was referred to the death of the testator. This prevailing rule was reversed by the decision in *Cripps* v. *Wolcott*, but it has not, we submit, been accepted as the correct rule in this country. This question was considered at an early date in South Carolina, in *Drayton* v. *Drayton*, 1 Dess., 324, and the doctrine enunciated is in accord with our contention, the court holding that when used in a will, the words of survivorship, in the absence of manifest contrary intent, would be referred to the time of the death of the testator. So also in *Hansford* v. *Elliott*, 9 Leigh (Va.), 79, the same rule was recognized and applied. This case contains a very learned exposition of the authorities and was afterwards followed in *Martin* v. *Kirby*, 11 Gratt., 67. The same question was before the Court of Errors in New York in *Moore* v. *Lyons*, 25 Wend., 119, and that court went into an exhaustive examination of the English authorities, criticising and condemned the cause of *Cripps* v. *Wolcott*, *supra*, and followed *Drayton* v. *Drayton*, *supra*, and held that the survivorship related to the date of the death of the testator, basing that decision upon the following considerations: That it was most equitable; that it was in harmony with the policy of law which favors the division of estates, and that it was in harmony with the prin-

ciple which declares a remainder should be considered vested rather than contingent. The Supreme Court of Pennsylvania also considered the matter in *Johnson* v. *Morton*, 10 Pa. St., 245, and the decision was in accord with the doctrine of the Virginia and New York courts. In the same court, in *Ross* v. *Drake*, 37 Pa. St., 373, the Justice, Strong, referred to the fact that the English doctrine in *Cripps* v. *Wolcott* had not been applied even in England, to cases of realty, and in support of the assertion quoted *Edwards* v. *Symons*, 6 Taunt., 213, and *Long* v. *Prigg*, 8 B. & C., 231, and also declared the law in England still to be unsettled. See also *Lawrence* v. *McArter*, 10 Ohio, 38; *Hempstead* v. *Dickson*, 20 Ill., 194.

The testator does not say that, after the death of his wife the estate shall " go to," or " vest in," or " become the property of," the survivors, but he says, shall after her death " revert to my surviving children." Now we have a right to assume that the testator used the word " revert " in the usual and common acceptation. Webster defines the word as follows : "*Revert*—In law, to return to the proprietor, after the determination of a particular estate." What then can be clearer than that the testator used the word in the same sense? The estate was, upon the death of his wife, to revert to, or return to, those who, surviving him at his death, became vested of his interest in the property at his death, subject only to the postponed enjoyment, to wit: during the possession of the life tenant.

2. The complainant, as one of the heirs of Sarah Mulloy, her deceased aunt, is entitled to one-fourth of said Sarah's interest in the estate of Rodey O'Brien. Sarah Mulloy having survived both the testator and the life tenant, was undoubtedly entitled to a share of the property, and dying intestate and without issue, the complainant inherits as one of the heirs.

3. Daniel O'Brien, as one of the surviving children of Rodey O'Brien, would have been entitled to a share in the estate but for the fact that the devise to him is, by operation of law, null and void. *Elliot* v. *Brent*, 6 Mack., 98. There-

fore the testator died intestate as to that portion of his estate, and the complainant inherits a share in the same, both as heir of her mother or her grandfather and as one of the heirs of her aunt, Sarah Mulloy.

4. That complainant's legacy of $250, with interest, is under all the circumstances of the case, a charge on said real estate. While primarily application must be made to the personal property for the payment of legacies, in a case like this, where the legacy is made a charge on "the estate," the real estate is equally responsible for the payment. The testimony shows, that no estate of Rodey O'Brien now exists, save the real estate in question, and as payment was postponed until "after death of my dear wife," the estate as it then existed, and now exists, must respond.

The CHIEF JUSTICE delivered the opinion of the Court:

The first of the claims made by the complainant is the one that has given rise to the principal and important question in the case, and the question that has been most extensively discussed at bar; and that is, at what time did the remainder limited to the *surviving* children of the testator vest? Whether immediately on the death of the testator, or not until the termination of the life estate devised to the widow? If not until the last mentioned event, the remainder would continue contingent until the event happened, at which period the then surviving children would constitute the class of devisees to take.

This is a question of construction, and the whole difficulty arises upon the use of the word *surviving* in the limitation, and upon the meaning to be given to that word. If, by proper construction, this word refers to the time of the death of the testator, all the children then living, unless disqualified for some legal cause, would be entitled. But if, on the other hand, this word surviving refers to the termination of the life estate, as the period at which the vesting is to take place, the estate would remain contingent, and the objects to take unascertained until the death of the life tenant, even though

that event might not happen until after a long lifetime. In the meantime the estate devised in remainder remains inalienable.

The case has been ably argued on both sides, and most of the authorities bearing upon the question have been brought to the attention of the court. It is, however, a question in regard to which there has been great contrariety of and fluctuation in judicial opinion, and it would be a hopeless as well as a profitless task to undertake to review all the cases, English and American, upon the subject. Few terms employed in wills have given rise to more litigation than the words *survivors* and *surviving*. The intention of the testator, of course, when that can be clearly ascertained from the language of the will, must control; and many of the cases referred to depended more upon the special terms and context of the wills than upon the application of any settled or technical meaning of the words survivor or surviving. But an examination of the authorities shows beyond question that, in the absence of any special terms or context to indicate clearly the intention of the testator to the contrary, the older English authorities, and a strong current of leading American authority, are very decidedly in favor of referring survivorship to the death of the testator, rather than to the termination of the intervening particular estate. This construction is founded upon very obvious reasons. In the first place, it is a construction that tends to preclude the possibility of a state of intestacy, resulting from the contingent nature of the estate, and the possible survival of the tenant for life beyond the lives of all the members of the class who are designed to succeed to the possession on the death of the tenant for life. This is strongly illustrated by what was said by Lord Alvanley, M. R., in *Maberly* v. *Strode*, 3 Ves., 450. In that case it was held, the case being on a devise of both real and personal estate, that words of survivorship added to a tenancy in common in a will, should be applied to the death of the testator, except where an intention to postpone the vesting is apparent. In the conclusion of his opinion,

after referring to the case of *Perry* v. *Woods*, 3 Ves., 204, where he had examined all the previous authorities upon the subject, the Master of the Rolls said: "The life of the son [the life tenant] is a very long period; within which it was very likely every one of those nephews and nieces might be dead; in which case there would be a total intestacy; and that is one reason why it is necessary to adopt, if possible, the construction of the word 'survivorship' as applicable only to the death of the testator. The construction, that the benefit of survivorship was to prevent a lapse, and that the interests vested at the death of the testator, is much the most beneficial construction. Upon these authorities, I am of opinion that upon these blind words the safest and soundest construction, best warranted by the authorities, most beneficial to the parties, most likely to be that intended, is, that the meaning is such as shall survive the testator; but that it is not meant that it should remain in contingency, and vest only in such as should happen to survive the son, with the chance of the whole being lost and a total intestacy occasioned."

Then, again, the construction that the term *surviving* refers to the death of the testator, rather than to the death of the tenant for life, conforms to and promotes the well settled rules of construction, founded in principles of reason and policy, such as that a remainder will never be construed to be contingent when it can be taken to be vested; and that estates shall be held to vest at the earliest possible period, unless there be a clear manifestation of the intention of the testator to the contrary. *Doe* v. *Considine*, 6 Wall., 475, and cases there cited. Here there is nothing to clearly indicate the intention of the testator to postpone the vesting of the estate in the surviving children until the termination of the life estate of the widow. The use of the word "revert" would rather signify a pre-existing right or estate in the children. It has no signification to warrant the conclusion that the estate was then to vest and not before. The use of the adverb "after" is in such sense as is common in a great

many of such limitations; but there never has been stress laid upon it, as determining the intention as to the time of vesting the remainder, unless used in connection with other more expressive terms. Such adverb of time is construed to relate to the time of enjoyment of the estate. *Doe* v. *Considine, supra.*

The case that has given rise to the supposition that, in cases of bequests of personal estate at least, words of survivorship are *prima facie* to be referred to the time of distribution or enjoyment, rather than to the death of the testator, is that of *Cripps* v. *Wolcott,* 4 Madd., 12, decided by Sir John Leach, Vice Chancellor, in 1819. In that case the Vice Chancellor said that he considered it to be then settled that if a legacy be given to two or more, equally to be divided between them, or to the survivors or survivor of them, and there be no special intent to be found in the will, that the survivorship was to be referred to the period of division. But if there be no previous interest given in the legacy, then the period of division was the death of the testator, and the survivors at his death would take the whole legacy. That case has been referred to and apparently followed in subsequent cases in England relating to personal estate.

But the case of *Cripps* v. *Wolcott* has been severely criticised as being an innovation upon a pre-established rule of construction, and it has met with decided opposition from courts of high authority. It has not been accepted in England as supplying a satisfactory rule of construction applicable to devises of real estate. The rule applicable to such devises rests upon decisions made long before, as also upon decisions made subsequent to that of *Cripps* v. *Wolcott.*

Mr. Jarman, a text writer of high authority both here and in England, in his Treatise on the Construction of Devises, published with his (the third) edition of Powell on Devises, after reviewing all the English cases upon the subject down to the time of that publication, says in regard to the case of *Cripps* v. *Wolcott,* on pages 748 and 749: " The Vice Chancellor's doctrine, in reference to cases in which *no* previous

interest is given, is unquestionably correct. It not only rests on the authority of Lord Cowper's decision in *Bindon* v. *Suffolk*, recently confirmed by *Smith* v. *Holock*, but necessarily results (assuming that indefinite survivorship is excluded by the tenancy in common) from the circumstance of there being no other period than the death of the testator to which the survivorship can be referred. His honor's position in reference to cases in which a previous interest is given, is more open to controversy. It involves a very extensive opposition to authority, proscribing a list (inclusive of cases relating to devises of real estate, which appear not to be distinguishable in principle) of no less than *nine decisions*, viz.: *Stringer* v. *Phillips*, 1 Eq. Cas. Abr., 292, decided at the Rolls in 1730; *Rose* v. *Hill*, 3 Burr., 1881, by Lord Mansfield in the Court of King's Bench; *Wilson* v. *Bayly*, 3 B. P. C., Toml. ed., 195, by the House of Lords; *Roebuck* v. *Dean*, 2 Ves. Jr., 265, by Lord Rosslyn; *Perry* v. *Woods*, 3 Ves., 204, and *Maberly* v. *Strode*, 3 Ves., 450, by Lord Alvanley; *Brown* v. *Bigg*, 7 Ves., 279, by Sir W. Grant; *Garland* v. *Thomas*, 1 Bos. & Pull., new rep., 82; and *Edwards* v. *Symons*, 6 Taunt., 213, by the Court of Common Pleas: *in all which, notwithstanding that a previous interest was given, survivorship was referred to the death of the testator.*" The author then examines some of the cases referred to by the Vice-Chancellor in support of his decision, and shows that they do not maintain the principle for which they were cited. And he then adds: "Such, then, is the state of the authorities for and against the rule laid down by the court in *Cripps* v. *Wolcott*. Had the Vice-Chancellor been aware of the actual state of the decisions upon the subject, he would hardly have unhesitatingly propounded the doctrine which is here ascribed to him. He would probably have felt the difficulty, if not the impossibility, of encountering such a mass of authority as had established the death of the testator to be the period to which words of survivorship related, however his own judgment might have disapproved of the reasoning on which it was founded, and even admitting that

his conclusion from the whole range of the cases would have been the same, yet more confidence would have been felt in that conclusion if all the adjudications had been examined." And in the larger and more comprehensive work of Mr. Jarman, that on Wills, he reviews the decisions both prior and subsequent to that of *Cripps* v. *Wolcott*, and after showing what the former rule was, he shows the present state of the English law to be, that where there is a gift of *personal estate*, to a person for life or any other limited interest, and after the determination of such interest to certain persons *nominatim*, or to a class of persons as tenants in common, *and the survivors of them*, these words are construed as intended to carry the subject of gift *to the objects who are living at the period of distribution.* But as to real estate, there is no such settled rule of construction, though there are cases in which judges have said there should be no distinction in the application of the rule. 3 Jarm. on Wills, 573 to 580. And so Hawkins, in his work on Wills, 261, says, that it is not yet settled whether the rule in *Cripps* v. *Wolcott* applies to real estate, and that the older authorities are strongly in favor of referring survivorship to the testator's death, and he refers to the important case of *Doe* v. *Prigg*, 8 B. and Cr., 231.

In this last case, decided by the Court of King's Bench in 1828, the question arose as to the application of the rule to a devise of real estate *to a class*, as in the present instance. The estate was devised to the mother of the testator for life, and after her death to his wife for life, and *from and after* the decease of his mother and wife, he gave and bequeathed the property to the *surviving* children of J. and W., and to their heirs forever, the rents and profits to be divided between them equally. And the question was, to what period did the words " surviving children " refer. The case was fully argued, and the case of *Cripps* v. *Wolcott* was urged upon the court. But after time taken to consider, the unanimous judgment of that very learned and able court was delivered by Mr. Justice Bayley, who reviewed the authorities, and, in

the course of the opinion, said: "The testator's death is in this case so much the more rational period, so much the more likely to have been intended, and falling in, as it does, with the rule of law for vesting estates as soon as they may, instead of leaving them contingent, that we are of opinion that the estate here vested in remainder immediately upon the testator's death, in the then children of J. and W." And that the rule as laid down by Sir John Leach is not an established one, as applied to devises of real estate, is fully shown by Lord Chancellor Westbury, in his opinion in the House of Lords, in the case of *Taaffe* v. *Conmee*, 10 Ho. Lords Cas., 64, delivered in 1862.

In this country, words of survivorship appear to have been a source of perplexity to the courts, and to have given rise to a contrariety of decisions. In New York, in the case of *Moore* v. *Lyons*, 25 Wend., 118, a case involving a devise of real estate, the question was elaborately discussed, in the Court of Errors, and the authority of *Cripps* v. *Wolcott* was entirely rejected, and it was held that the words of survivorship should be construed to refer to the death of the testator. So, in Pennsylvania, in the cases of *Johnson* v. *Morton*, 10 Penn. St., 245, and *Ross* v. *Drake*, 37 Penn. St., 373, the Supreme Court rejected the authority of *Cripps* v. *Wolcott* with emphasis, and followed the English rule existing prior to that case, as being best calculated to subserve the ends of justice. The same conclusion has been reached and maintained, upon full examination of the cases, by the courts of Virginia, Georgia, and South Carolina. *Hansford* v. *Elliott*, 9 Leigh, 79; *Martin* v. *Kirby*, 11 Grat., 67; *Vickers* v. *Stone*, 4 Ga., 461; *Drayton* v. *Drayton*, 1 Dess., 324. It is true that the Supreme Courts of several of the States, whose opinions are entitled to great respect, after some fluctuation in their conclusions, hold the contrary doctrine, and maintain the principle of *Cripps* v. *Wolcott*, as applicable to both real and personal estates; and these case have been cited and relied on by the counsel for the defendants in this case. But not being able to adopt and follow the authority of *Cripps* v. *Wolcott*,

as applicable to the devise of real estate, we cannot follow the decisions based upon that case.

It is certainly clear, from what we have said, and the authorities that we have cited, that the established and prevailing English rule of construction, at the time of our separation from England, and for a long time after, was that words of survivorship in a devise after a particular estate, in the absence of a clear intention to the contrary, referred to the death of the testator, and not to the termination of the particular estate. That rule, as to devises of real estate, has not been supplanted in England by any definite and conclusive announcement of the highest court of the Kingdom; and we see no good or sufficient reason for departing from it. To do so might be the means of disturbing titles otherwise good, and it is universally conceded that in no branch of the law is it more important for the courts to adhere to fixed and settled rules than in that relating to real property. If changes in established rules be desirable, let them be made by the legislature, and then no antecedent rights will be disturbed.

It follows, that if this were a devise to the surviving children as *tenants in common*, the complainant would be entitled as heir of her mother, as decreed by the court below, the mother being one of the surviving children. And she would be entitled to one-fourth of the estate; for as one of the five surviving children was an attesting witness to the will of the father, the devise, so far as he, the witness, was concerned, was rendered utterly null and void, by Section 1 of St. 25 Geo. 2, Ch. 6, as to the real estate, that statute being in force in this District. That being the case, and the devise being to a class, and the will not apportioning the estate to the individual members of that class, the estate vested as an entirety in the members of the class capable of taking it, as if the disqualified members did not exist; and that, too, whether the devise be to the class as joint tenants or tenants in common. This would appear to be well settled, as in the case of *Fell* v. *Biddolph*, L. R., 10 C. P. 701, where there was a devise to " children," as a class, as tenants in common, and

the attesting witness to the will, one of the children, was, by reason of the Statute of Wills, incapable of taking at the death of the testator, and it was held, on full review of the authorities, that he could not be reckoned as a member of that class, and his share, therefore, went to the rest of the class, the other children, and not to the heir-at-law. The principle of that case is supported by many authorities. *Shaw* v. *McMahon,* 4 Dr. & W., 431 ; *Doe* v. *Sheffield,* 13 East, 526 ; *Young* v. *Davies,* 2 Dr. & Sm., 167-172 ; *Dimond* v. *Bostock,* L. R. 10 Ch., 358 ; *In re Coleman and Jarrom,* 4 Ch. Div., 165, 171, 172, 173 ; 3 Jarm. on Wills, 17. See also *Young* v. *Robinson,* 11 G. & J., 328.

But this devise is to the surviving children of the testator, without declaring that they should take as tenants in common, or that they should take the estate to be divided, share and share alike, or in any other manner. They took the estate, therefore, as joint tenants, with the right of survivorship among them; and that being so, the complainant can take nothing; for, both upon the death of her mother and the death of her aunt, Mrs. Mulloy, their shares or interests in the estate accrued to the remaining surviving children, members of the class capable of taking. This is simply the consequence of the right of survivorship incident to a joint tenancy. *Young* v. *Davies,* 2 Dr. and Sm., 167; *In re Coleman and Jarrom, supra* ; *Morgan* v. *Britten,* L. R. 13 Eq. Cas., 28 ; *Newill* v. *Newill* L. R. 7 Ch. Appl., 253; 3 Jarm. on Wills, 17. There is nothing in the case to sever the joint tenancy, and there is no statute in force in this District, such as that of Maryland of 1822, Ch. 162, and of other States, whereby it is provided that no deed or devise shall be construed to create an estate in joint tenancy, unless it be expressly declared that the property shall be held in joint tenancy. The common law principle upon the subject prevails here.

The remaining question is, whether the legacy of $250, given to the complainant by her grandfather's will, was made a charge upon the real estate devised. And in regard to

this question, we think the court below was entirely right in holding the legacy to be a charge upon the real estate. As has been observed, the legacy was made payable *out of the estate* of the testator *after* the death of his wife, who was sole executrix and legatee and devisee of all the property, both real and personal, of the testator for her life. It is true, as a general rule, the personal estate of the deceased is the primary fund for the payment of pecuniary legacies. Here, however, the personal estate was all given to the wife for life, and was of small amount, and of a character likely to be rendered valueless by the life-long use by the widow. The legacy was not due until after the death of the widow, and we must suppose that the testator understood that the personal effects might be exhausted or rendered valueless before the legacy became due. He certainly intended the legacy to be paid; and as it was not to be paid until after the death of the executrix and legatee for life, the fair and just inference is, that he intended it to be paid out of his estate remaining after the death of the life-tenant—whether the estate remaining was real and personal, or real only. This is the fair construction, and is within the principle of the authorities. *Harris* v. *Fly*, 7 Paige, 421; 2 Perry on Trusts, Sec. 470. If, therefore, the legacy be not paid by the devisees in remainder, the complainant will be entitled to a decree for the sale of the real estate, to raise a fund for the payment of the legacy.

The decree below will be reversed, and the cause remanded, that a decree may be passed in accordance with this opinion. The cost of the appeal, the one-half thereof to be paid by the complainant, the present appellee, and the other half, together with the costs in the court below, to be paid by the defendant, or out of the proceeds of sale, if the property shall be sold under a decree of the court.

*Decree reversed and cause remanded.*