TERRILL *vs.* THE PUBLIC ADMINISTRATOR.

TERRILL *vs.* THE PUBLIC ADMINISTRATOR.

*In the matter of the Estate of* WILLIAM TERRILL, *deceased.*

WHERE the testator gave all his property to his daughter Elizabeth, for life, and directed, on her decease, if there should be any failure or deficiency in a legacy of ten thousand dollars contained in her will, in favor of his adopted daughter Catharine, that a sufficient amount to make up such sum should be paid out of his estate to Catharine, her executors, administrators, and assigns ; and Catharine died before Elizabeth,—*Held,* that the legacy under the testator's will became due on the decease of Catharine, and was transmissible to her legal representatives.

When a legacy is given after the decease of a life-tenant, the general rule is that both interests vest on the testator's death, and the bequest does not lapse by the decease of the legatee before the life-tenant.

Conditions are either positive or negative, and involve either the occurrence or the non-occurrence of a future event. A condition precedent suspends the vesting of the legacy, and if the legatee die before the eventuation of the condition, the legacy falls.

Negative conditions must necessarily be fulfilled, when it is certain that the thing cannot be done. If the condition is something not to be done by the legatee or to the legatee, the negative must be made certain when he dies, *re non facta.* A negative condition relating to the donee is accomplished by his decease, if not determined before.

A bequest to a person, when he shall die, is not void for incongruity, but is ascertained on his decease, and is transmissible to his legal representatives.

A bequest to C, in default of her receiving a bequest from E, is not equitably satisfied by a legacy from E, to the issue of C.

THE SURROGATE.—The testator, by his will, devised and bequeathed all his estate real and personal to his executors, in trust, to pay to his daughter Elizabeth the income thereof during her life ; and, after her death, to divide the principal among his grand-children, on attaining majority, subject, however, to the following provision, to take effect on the decease of his daughter Elizabeth, viz., " and after her death, if there shall be any deficiency or failure in a legacy of ten thousand dollars, bequeathed by my said daughter Elizabeth,

unto my adopted daughter, Catharine Jane Alver, in and by a will heretofore executed by my daughter Elizabeth, then (in trust) to pay out of my said estate to my adopted daughter, Catharine Jane, her executors, administrators, and assigns, to and for her and their own use, so much money as shall be requisite to make up such deficiency or failure in the said legacy, be such deficiency or failure the whole or any part of the said sum of ten thousand dollars, it being my will and intention that in any event, my said adopted daughter, Catharine Jane, shall receive the nett sum of ten thousand dollars out of the property of my said daughter Elizabeth and myself." The legatee named in this clause survived the testator, but died before Elizabeth, the life-tenant. After her decease, Elizabeth Terrill revoked the legacy of ten thousand dollars, recited in the will of her father William, and made bequests in favor of the issue of Catharine exceeding the amount of the original legacy. I am now asked to decide whether the provision in the will of William Terrill, in behalf of Catharine, became a vested interest on his decease, transmissible to the legal representatives of Catharine on her decease.

It is clear, according to the well-settled rules of construction applicable to testamentary instruments, that the words " executors, administrators, and assigns," contained in the legacy to Catharine, under the will of William Terrill, are ordinarily terms of limitation, and not terms of purchase or of substitution. When the legatee has died before the testator, they are not considered as enlarging the scope of the bequest, nor as giving the legal representatives of the legatee any greater right than the legatee possessed. In such a case, they do not prevent a lapse. For example, had Catharine died before William, there can be no doubt her legacy would have failed, notwithstanding the words in question. But where the legatee survives the testator, and the enjoyment of the bequest has been postponed to a future period, before which the legatee happens to die, these words sometimes aid in determining whether the testator intended the legacy to vest on his decease, and before the arrival of the future

period. In the present bequest, the payment is directed to be made to "Catharine Jane, her executors, administrators, and assigns, to and for her and *their own use;*" and the words "their own use," certainly look towards a payment to the legal representatives, by way of substitution.

In the next place, it is obvious that had this been a pure and simple legacy of ten thousand dollars, to be paid to Catharine on the decease of the life-tenant Elizabeth, the legacy would have vested on the testator's death, and, on the decease of Catharine, have devolved to her personal representatives. This is a rule well understood, and of frequent application, in cases of distribution after a previous life-estate. (*Monkhouse* vs. *Holme*, 1 *Bro. C. C.*, 298; *Blamire* vs. *Geldart*, 16 *Vesey R.*, 314; *Packham* vs. *Gregory*, 4 *Hare R.*, 398.)

On the other hand, had Catharine survived Elizabeth, and had there been any deficiency or failure of the legacy to her under the will of Elizabeth, in consequence either of insufficient assets, or of a revocation of the bequest, or any other cause, then certainly Catharine would have been entitled, under the will of William Terrill, to the ten thousand dollars. The terms in which this sum is given are sufficiently broad and comprehensive to cover a failure arising out of a revocation.

While ascertaining whether or not this is a vested legacy, we must lay out of view, for the time, the bequests made by Elizabeth in favor of Catharine's issue, for it was completely within the option of the former to dispose of her estate to suit her own pleasure, and the legal effect or interpretation of her father's will cannot depend upon her acts, or upon her construction of that instrument. As a question of legal science, the case must be treated precisely the same as if Elizabeth had revoked her will, or had allowed it to stand unrevoked, in either of which alternatives Catharine could not have become the recipient of her bounty. The matter, then, is narrowed down to the single proposition, was this on the testator's decease a vested or a conditional legacy? Our rules upon the subject of conditional bequests have been mainly

derived from the civil law, with this difference, however, that we have not adopted all the nice refinements and distinctions of the Roman jurisprudence, and have generally inclined more to making legacies vested, when it could be done without violating settled principles, and in harmony with the intention apparent on the face of the will. Generally speaking, it may safely be said, that wherever by the civil law a legacy was vested, we hold it to be so, and, in many cases, where by the civil law the legacy was esteemed conditional, by our rule it is considered simple and absolute.

Conditions are either positive or negative; that is, they involve either the occurrence or non-occurrence of a future event. A condition precedent suspends the vesting of the legacy, and if the legatee die before the eventuation of the condition, the legacy falls. A bequest to A, *provided*, or *in case*, or *if*, he shall attain majority, lapses if the donee die before the age of twenty-one. It is made to hinge on an event which never occurs. So a bequest to A, provided he marry B, does not vest until the condition be fulfilled; and likewise, a bequest to A, provided his eldest son marry, fails, if he die before the event takes place. The point is thus stated in the digest: *Intercidit legatum, si ea persona decesserit cui legatum est sub conditione.* (*Dig.*, lib. 35, tit. 1, § 59.) The element which makes a condition is contingency, and that of a double character—uncertainty whether the event will happen, and uncertainty whether the legatee will be living when it may happen. The legacy under consideration was uncertain in the former sense, it being uncertain whether Catharine would receive anything under the will of Elizabeth; but it was not uncertain in the latter sense, because the fact would be ascertained at the instant of Catharine's death. Whether there would be any deficiency or failure of the legacy by Elizabeth to Catharine, would, of necessity, be determined when Catharine died. In other words, if the legatee had survived the life-tenant, the event would have been ascertained on the death of the life-tenant; but if the legatee had died before, then the event would have been ascertained

at her death. Such a bequest sounds only in condition, but is treated in the civil law as a simple legacy. The testator says in substance, I give to C, a legacy of ten thousand dollars in case she shall not receive a legacy of ten thousand dollars from E. It becomes certain on the death of C, before E, that she cannot receive the legacy from E, and she therefore immediately becomes entitled to receive it from the testator.

I have said, that the condition in the bequest under the will of William Terrill, is negative, and consists in the event of the legatee *not* taking under the will of Elizabeth. (*J. Voet, Com. Pand.*, lib. 28, tit. 7, § 6.) Now negative conditions must necessarily be fulfilled when it is certain that the thing cannot be done. If, therefore, the condition is something not to be done by the legatee or to the legatee, the negative must be made certain when he dies *re non facta.* Paulus thus puts the case, (*Dig.*, 35, tit. 1, § 103,) *Si ita legatum sit, Titio post decem annos dato, si satis ab herede non exegerit ; et Titius intra decimum annum decesserit, ad heredem suum transmittit legatum, quia moriente eo, conditio extitit.* It is thus evident that a negative condition relating to the donee, is accomplished by his decease, if not determined before. A legacy, therefore, based on the contingency that the donee shall not receive a bequest from a certain other person, becomes by the death of the former before the latter, a legacy ascertained on the death of the legatee. The discussion is thus resolved down to the question whether a bequest to A, on his death, is valid. This might seem to be incongruous, but it is consonant with the rules of the civil law. Pomponius, Paulus, Papinian, and Ulpian, agree, that a legacy is conditional, when framed thus : *Heres meus quum ipse morietur, centum Titio dato,* and will fail if Titius die before the heir ; but Ulpian states the following exception : *Contrà, si vero quum ipse legatarius morietur, legetur ei, certum est legatum ad heredem transmitti.* (*Pothier's Pand.,* lib. 35, tit. 1, § 5. See *Dig.*, lib. 35, tit. 1, § 1, 79.) "If, on the contrary, a legacy be given to a legatee when he shall

die, this legacy is certainly transmitted to his heir." The reason given for this was, that " the moment of death may be considered as yet the time of life, and it is the last moment of life ;" *nam mortis momentum est ultimum vitæ momentum.* Gellius says, philosophers do not agree on this point, some thinking it the last moment of life—some the instant of death—and others as a middle place between life and death. Pothier remarks, " our jurists have adopted the first opinion ;" (*Pothier's Pand.*, *lib.* 35, *tit.* 1, § 66, *note* 1 ;) and he adds, that a bequest given to a person when he shall die, is transmissible to his representatives, and is not conditional, " for it is certain it will vest while the legatee is living, since the time of death is reputed the last moment of life." At the least, it may be said, that the legacy becomes due at the same instant the event takes place ; there is a simultaneous concurrence of the accomplishment of the event, and of the vesting of the legacy. Without, however, entering into such subtleties, it seems sufficient to rest the sustentation of the bequest, upon the express terms of the will and upon the intention of the testator, who, unless he has made his bounty to depend upon the survival of the donee after a particular event, is to be presumed as intending the event and the gift which he has connected together, to occur *eodem instanti.* This, according to Papinian, is a pure and simple legacy, because it is not suspended upon a condition which may happen after the donee's death, but only upon delay. The event must happen, and the legatee cannot die before it will happen. (*Dig.*, *lib.* 35, *tit.* 1, § 79.)

That there is no incongruity in a legacy to become due on the death of the legatee, is illustrated by the case of *Sweet* v. *Chase*, (2 *Comstock's R.*, 73,) where the testator gave his wife the use of certain property for life, and *after* her decease a legacy of four hundred dollars, payable out of the proceeds of the same property when sold. The Court of Appeals recognized the validity of this bequest as a vested interest under the testator's will, to be *paid* after the widow's death. It is not at all unusual that the power of disposition of property after

death is given by wills and marriage settlements; and there are several cases in the books where the bequest of a residue to a life-tenant has been sustained. (*Urquhart* v. *Urquhart*, 13 *Simon. R.*, 613; *Scott* v. *Moore*, 14 *Simon. R.*, 35, and cases cited in *Sweet* v. *Geisenhainer*, 3 *Bradford's Surr. R.*, 124.)

Nor should we overlook, in this case, the strong and imperative language used by the testator, when penning this bequest, expressive of his intention that his adopted daughter should not be disappointed in the receipt of the legacy.   He declares it to be his " will and intention" that in " any event" she should receive ten thousand dollars out of the property and estate of his daughter, or out of his own estate.   The idea certainly was, that in no " *event*" should this bequest fail, and the legatee having survived the testator, it becomes the duty of the court to see, that in no event, shall the gift fail, if it is possible to sustain it without violation of the rules of law   This was the design and intent; the enjoyment of the benefaction was postponed for the convenience of the life-tenant, but the determination was clearly indicated, that out of one or the other of these two estates, ten thousand dollars should be received by the donee.   I must, therefore, after a full consideration of the case, come to the conclusion that the legacy by the testator, William Terrill, was vested in his adopted daughter at the time of her death, and became transmissible to her legal representatives.

It is urged, however, that the provision for the issue of Catharine, made by the will of Elizabeth Terrill, constituted an equitable satisfaction of the gift to Catharine, under the will of William Terrill; but the difficulty in applying the doctrine of equitable performance, is, that on Catharine's decease, her rights in personal estate devolved on her husband and not on her issue, and a gift to the latter cannot, therefore, be held as satisfaction of a gift vested in the former, within the intent of William Terrill's will.   The two legacies are in different rights, and now belong to different parties. Had it not been for this circumstance, I think I should have had no hesitation in concluding that the issue of Catharine

could not take both legacies; but, as the case stands, it seems clear that the administrator of Catharine must be declared entitled to the legacy under the will of the testator, William Terrill. However much this conclusion may be regretted under the circumstances, it is my duty to abide by the rules of law, and not bend them to avoid a particular hardship. Having once determined that the legacy given by the testator to his adopted daughter, Catharine, became due on his decease, and payable on the death of Elizabeth Terrill, it only remains for me to decree its payment, with interest.