JOSEPH STUART, AS ANCILLARY ADMINISTRATOR OF THE ESTATE OF MARGARET DOHERTY, DECEASED, PLAINTIFF, *v.* HENRY F. SPAULDING AND OTHERS, TRUSTEES UNDER THE LAST WILL, ETC., OF DANIEL DEVLIN, DECEASED, DEFENDANTS.

*Legacy payable on the death of a life beneficiary — when it vests upon the death of the testator — when remaindermen must take the fund at the death of its life tenant in its then existing condition.*

A testator by his will directed his executors to invest a sufficient sum to produce a dividend or income of $500 a year, and pay over the same to his brother during his life, and upon his death to pay over the sum thus invested to such person or persons as the brother might by an instrument in writing appoint. By a codicil this was changed by a direction that the executors were to invest a sum sufficient to produce a dividend of $1,000 a year. By a subsequent codicil they were directed to invest a sum sufficient to produce an income of £250 sterling a year, which was to be paid over to the brother, and upon his death the sum thus invested was "to be paid over to my (his) sister Margaret and her heirs." The rest and residue of his estate was divided into six equal parts and given to different persons named in the will.

*Held,* that the principal of the sum to be invested vested in Margaret at the testator's death, and passed to her representative upon her death during the lifetime of her brother.

The executors, upon their final accounting in 1878, set aside for the brother the sum of $26,390.63 and invested it in United States bonds. Subsequently the bonds were called in and the sum of $25,000 paid for them by the government; $24,650 of this amount was reinvested in government securities. The first investment produced a greater and the second a less income than that required to be paid to the brother.

*Held,* that the representatives of the sister must take the fund as diminished at the time of the death of the life tenant.

CASE submitted upon an agreed statement of facts.

*Solomon & Dulon*, for the plaintiff.

*Charles E. Miller*, for the defendants.

BRADY, J.:

The question presented for determination herein arises from the third clause of the second codicil of the last will and testament of Daniel Devlin, deceased. It appears that Margaret Doherty named in the clause died before the brother of the testator, to whom the income of the sum named was to be paid during his life. The defendants contend that the legacy to Margaret Doherty lapsed upon her death before Philip Devlin, the brother. The plaintiff contends that it did not. The clause under which the plaintiff claims is as follows:

" Instead of the direction to my executors to invest a sum sufficient to produce a dividend or income of one thousands dollars, as provided in the third clause of the foregoing codicil to be paid over to my brother, I direct them to invest, as in said clause provided, a sum sufficient to produce a dividend or income of two hundred and fifty pounds sterling per annum, which dividend or income shall be paid over to my said brother as in said sixth clause provided. The sum thus invested shall upon the death of my said brother be paid over to my sister Margaret and her heirs."

By the sixth clause of the will the executors were directed to invest a sum sufficient to produce a dividend or income of $500 a year, which dividend they were directed to pay over to the Rev. Philip Devlin, D. D., of Newtown-limavaddy, county of Derry, Ireland, and upon his death they were directed to pay over the sum invested to such person or persons as he might by an instrument in writing appoint. By the third clause of the first codicil to his will a change was made by which the executors were directed to invest, according to the will, a sufficient sum to produce a dividend or income of $1,000 per annum, which dividend was to be paid over as directed in the will; and the sum invested upon the death of the brother was also to be paid over in accordance with the provisions of the clause of the will, that is to say, to such person or persons as he might by an instrument in writing designate. And by the third clause of the second codicil, as we have seen, another change was made by which the dividend was increased and the sum invested

directed to be paid over to his sister Margaret and her heirs. It must be confessed that the rules which affect the question to be considered in this case are somewhat difficult of precise comprehension and application, but, nevertheless, that which must control herein can without serious disturbance be eliminated. In the case of *Warner* v. *Durant* (76 N. Y., 133), and which presented the question whether a legacy became vested in the legatee in his life time, though he died before the time fixed for the payment, the court said : "It is a general principle that where the gift is absolute and the time of payment only postponed ; time not being of the substance of the gift, but relating only to the payment, does not suspend the gift but merely defers the payment." And having declared that that principle would not act in that case to vest the legacy said that there was another rule to be noticed, which was this : "Where there is no gift but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives." \* \* \* "But this rule does not act in this case ; for there has been a distinction grafted upon it. It is this : Where the gift is to be severed *instanter* from the general estate for the benefit of the legatee ; and in the meantime the interest thereof is to be paid to him ; that is indicative of the intent of the testator that the legatee shall, at all events have the principal, and is to wait only for the payment until the day fixed."

In this case the testator by his will provided for the investment of a sum, and the payment of the interest or income of it to his brother, before the general disposition of his estate. Immediately after the sixth clause already mentioned, by the seventh clause, he provided that all the rest, residue and remainder of his estate, both real and personal, should be divided into six equal parts. It is clear therefore, to use the language of *Warner* v. *Durant* (*supra*), that he severed the gift from the general estate for the benefit of the persons named, *i. e.*, his brother and Margaret, his sister, who is mentioned as the residuary legatee by the last codicil.

In the case of *Loder* v. *Hatfield* (71 N. Y., 92) the question whether legacies vested in legatees in their lifetime was considered and the court said : "Certainly, the idea conveyed by the terms of the gift, as above stated, is of an absolute, sure and lasting bequest

to belong at once and forever to the legatees named, or to those coming after them in legal succession; while the severance of the clause of bequest from the clause of time of payment repels, rather than supports, the notion that more than the time of payment was meant to be contingent. The gift is direct to the legatees and their heirs, and is independent of the direction when to pay. In such case the rule is that the direction for payment, on the happening of an event named, shall not defer the vesting of the legacy." And the court further said that the words of the gift in the will in that case being "to them and their heirs forever" were entitled to weight, inasmuch as they showed that the testator had in mind a permanent separation from the bulk of his estate of the amount of these legacies and the transmission of it in a different course of succession. And it was also stated to be another rule that if the direction to pay at a future period be for the convenience of the estate or to let in some other interest the vesting of the gift was not prevented. A proposition for which the case of *Packham* v. *Gregory* (4 Hare, 398) was cited.

As already suggested, it is quite evident that the testator separated the sum to be invested for the benefit of his brother from the bulk of his estate, and intended not only that his brother should enjoy the benefit of the income arising from it, but, originally, that he should have the power of disposing of it in such manner as he might think proper, by an instrument in writing. When the change in the sum to be invested took place which was accomplished by the second codicil, this intention was not in any way changed, inasmuch as it was provided that upon the death of his brother the sum invested should be paid over to his sister Margaret and her heirs— these words "and her heirs" having, according to the case just cited and the rule just stated, an important effect on the question of intention. There are several cases kindred to this holding that, where the benefit of a legacy is given for life to one and after his death to another, the interest of the second legatee is vested, and his personal representatives would be entitled to the property, though he die in the life time of the person to whom the property is bequeathed for life. (*Terrill* v. *Public Administrator*, 4 Bradf., 245; *Barker* v. *Woods*, 1 Sandf. Ch., 129; *Conklin* v. *Moore*, 2 Bradf., 179; *Packham* v. *Gregory, supra*.)

In the case of *Bedell* v. *Guyon* ( 12 Hun, 396), the executors were directed by the testator to invest and to keep invested, out of his estate the sum of two thousand dollars, and to apply the increase thereof to the support of his nephew George B. Seguine and during the full term of his natural life ; and at and upon the decease of the said George B. Seguine, he directed the sum named so to be invested to be paid, in equal parts, to Mary Jane Guyon, wife of Peter Guyon, Martha Jane Guyon, wife of John Wesby Guyon; and Helena Seguine, children of said George B. Seguine, and Martha Guyon, daughter of said Peter Guyon. Martha Guyon died before George B. Seguine and the defendants were her administrators. It was claimed from that circumstance that she had no vested interest in the legacy and that none passed to her personal representatives. It was held, however, that the legacy became vested at the death of the testator. And this proposition was sustained by the several cases cited.

In *Betts* v. *Betts*, (4 Abb. N. C., 317), in confirmation of the doctrine stated, Justice VAN VORST said : " The general rule to be extracted from the authorities is that when legacies are payable in the future, without condition annexed, or any expressed intention of the testator to the contrary, whether they are of personal property or of real estate directed to be sold to discharge them, they vest at the death of the testator, and this though a life estate may intervene before payment."

In addition it must ·be said, as illustrated by DENIO, C. J., that the general, if not the universal rule is, that where there is a person in being in whom the estate in remainder would vest in possession if the precedent estate should immediately terminate, it is vested in interest, though it may not be certain that such person will be living or qualified to take at the actual cessation of the prior estate. (*Matter of the Trustees N. Y. P. E. Pub. School*, 31 N. Y., 589; see, also, *Livingston* v. *Greene*, 52 N. Y., 118.)

It is not deemed necessary to accumulate authorities upon the proposition thus stated. It was clearly the intention of the testator to devote the sum to be invested to the persons named, who were his brother and sister ; and it seems to be free from doubt, therefore, that the plaintiff is entitled to recover.

The defendant's rely, among other cases, upon that of *Colton*

*et al.* v. *Fox et al.* (67 N. Y., 348). The question presented in that case sprung from the eighth clause of the will, by which the testator gave, devised and bequeathed all the rest, residue and remainder of his estate, both real and personal, to his executors upon the trust named in it, viz. : to pay the income, rents, issues ai d profits to his brothers, naming them, and his sisters, naming them, equally, share and share alike, during their joint lives, and after their several deaths to divide the real and personal estate among the children of his brothers and sisters respectively, the children to take the parent's share ; and he then declared as follows : " And I hereby expressly declare that in case either of my said brothers or sisters shall die, leaving the others surviving, then the income herein intended for the one or the other so dying, shall be paid to the issue or representative of the one or the other so dying."

It was contended in that case, by the counsel for the plaintiff that the interests of the children of the respective brothers and sisters vested in them at the death of the testator. But this was held untenable. The court said : " Here, in the first place, the title is in express terms vested in the executors, and there is no provision for paying any part of the *corpus* until the death of the four beneficiaries ; in fact, as we have seen, the provisions of the will repel any such idea. The testator placed the title of this portion of his property in his executors, and directed that it should remain there until the death of four persons, with a limitation over to such of their children as should be living. It is a future interest or estate contingent upon surviving the four persons named."

That case is very different from the present, for the reason of the limitation suggested, and for another reason, namely, that the title to the estate out of which the payment was to be made was in express terms vested in the executors. In this case the executors were directed to invest, without any prior provision that the title should vest in them.

The case of *Magill* v. *McMillan* (23 Hun, 193), was a case also in which all the property of the testator was given to the executors with power of sale and disposition and trust, to manage the estate and invest the principle and to collect the income and pay it over to his five children named in equal proportions, until Ellen, one of them, arrived at the full age of twenty-one years, or in case of her

death, until Margaret, another one of his children, became twenty-one years of age. Upon the arrival of Ellen at the age of twenty-one years, or in case of her death, when Margaret reached that age, the executors were directed to sell all his real property and convert his personal property into money, and then to divide his said estate between the said children equally, share and share alike. It was also provided that should any of his children die before such distribution, leaving issue her surviving, such issue should take the share his, her or their parent would have been entitled to if living, and in the same manner, *i. e.*, in equal shares. One of the children died intestate leaving a husband, but was of full age at the time of her death which took place before Ellen arrived at the age of twenty one-years. The husband of Mary Ann claimed the share his wife would have received on the distribution had she lived until the time came for this purpose, on the theory that her interest vested at the death of the testator. It was held that there was no immediate gift to the children, as all was given to the executors to divide among the children when Ellen arrived at the age of twenty-one years, until which time the title to all the property was in the executors, and none but living children could share in the distribution; and further, that the right to share in the distribution was contingent upon the duration of the life of the beneficiary Ellen, or until she became twenty-one years of age; and also that futurity was annexed to the substance of the gift and not to the time of payment.

That case is essentially different from the one in hand for the direction is absolutely to pay upon the death of the brother of the testator to Margaret, his sister named in the codicil.

There are many cases referred to by the counsel for the defendants in his able and elaborate brief which have been examined, and in regard to which it is only necessary to say that they are distinguishable from the present case and in no way conflict with the rule herein stated as controlling of the question presented according to the adjudication in this State. It must be said also that due consideration of the entire will does not lead to the conclusion that the testator intended to do other than was expressed by the codicil, namely, to separate from the bulk of his estate the sum directed to be invested, and to give the income thereof to his brother during

his life and the principal absolutely to Margaret and her heirs upon her death.

It further appears that the executors set aside and invested for Philip Devlin the sum of $26,390.63, which amount and investment were approved by the decree of the surrogate upon the final accounting in December, 1878, to which Philip Devlin and the administrator of Margaret Doherty, the testator's sister, were parties; that the entire estate had been distributed under and in the manner directed by the surrogate's decree, and, further, that this money invested in bonds of the United States was diminished by a call of the government for them. It also appears that the investment originally produced an income larger than the £250 mentioned in the codicil, which balance was paid over by the defendants to other legatees under the will. It appears, further, that the amount paid by the United States government for the bonds which became the subject of the investment was $25,000, and that in August, 1879, the defendants invested $24,650 of the first mentioned amount in bonds of the United States, commonly known as United States currency sixes, leaving a cash balance of $350 in the hands of the executors; and, further, that this last mentioned investment has not produced a yearly income of £250, but of $1,200. In addition to which a yearly income has been derived from the $350, amounting to twenty-one dollars per annum.

Under these circumstances we think that the plaintiff should take the fund in its present condition as diminution arose from no fault or neglect on the part of the defendants, and as there is no provision in the will which requires that any other than the sum invested for the particular fund set apart should be paid over. The investment involved a single act by the executors, and the fund set apart was to be paid over on the death of the life tenant.

Judgment for the plaintiff is awarded in accordance with these views.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment ordered for plaintiff.